John A. Yanchunis (*pro hac vice*)
jyanchunis@forthepeople.com
Ronald Podolny
ronald.podolny@forthepeople.com
**MORGAN & MORGAN COMPLEX LITIGATION GROUP**
201 North Franklin Street 7th Floor
Tampa, Florida 33602
(813) 223-5505 (tel)
(813) 223-5402 (fax)

*Counsel for Plaintiffs and the Putative Class*

# IN THE UNITED STATES DISTRICT COURT

## FOR THE SOUTHERN DISTRICT OF NEW YORK

| | |
|---|---|
| ERIKA BAUMGARTNER, DANIEL LOPEZ and SHAUN KRAMM, on behalf of themselves and all others similarly situated, | **CASE NO.** |
| Plaintiffs, | **CLASS ACTION COMPLAINT** |
| vs. | |
| YOTTA TECHNOLOGIES INC., EVOLVE BANK & TRUST | **JURY TRIAL DEMANDED** |
| Defendants. | |

1
2
3
4

Plaintiffs, Erika Baumgartner, Daniel Lopez and Shaun Kramm ("Plaintiffs"), individually, and on behalf of all others similarly situated, by and through their counsel, bring this action against Yotta Technologies Inc. ("Yotta") and Evolve Bank & Trust ("Evolve") (collectively "Defendants") allege as follows:

5

## NATURE OF THE ACTION

6
7
8

1.      This action is brought by Plaintiffs, individually and on behalf of a class of similarly situated customers of Yotta arising from a service disruption that occurred on or about June 1, 2024 and continues in part to this day. (the "Service Disruption").

9
10
11
12
13

2.      As a result of Defendants' negligence and other violations of law, Plaintiffs and Class members were prevented from accessing their Yotta accounts for months – denying access to the only source of money for many. During the Service Disruption, Plaintiffs and Class members were unable to spend or withdraw their funds from their accounts needed for the basic necessities of life, such as food, clothing, shelter and medicine.

14
15
16

3.       Plaintiffs and Class Members seek damages and injunctive relief based upon Defendants' unlawful conduct denying Plaintiffs and Class Members (defined below) the ability to access and use funds in their accounts.

17

18

## JURISDICTION AND VENUE

19
20
21
22

4.      This Court has subject matter over this action pursuant to the Class Action Fairness Act, 28 U.S.C. § 1332(d). The aggregate claims of the individual Class Members exceed the sum or value of $5,000,000, exclusive of interest and costs; there are more than 100 putative class members defined below; and there are numerous members of the proposed class who are citizens of a state different from Defendants.

23
24
25

5.      This Court has personal jurisdiction over Defendants. Yotta is headquartered in New York, New York.  Further, both Defendants Yotta and Evolve conduct substantial business in this District and a substantial part of the acts and omissions complained of occurred in this District.

26
27
28

6.      Venue as to Defendants is proper in this District under 28 U.S.C § 1391 because a substantial part of the events or omissions giving rise to the claim occurred in this District, Yotta

Case No.                                    2                          CLASS ACTION COMPLAINT

maintains its principal place of business in this District. All Defendants are authorized to conduct business in this District and have intentionally availed themselves of the laws and markets within this District.

## **PARTIES**

7.    Plaintiff Erika Baumgartner is a resident and citizen of Cook County, Illinois and a Yotta customer.

8.    Plaintiff Daniel Lopez is a resident and citizen of Duval County, Florida and a Yotta customer.

9.    Plaintiff Shaun Kramm is a resident and citizen of Los Angeles County, California, and a Yotta customer.

10.    Defendant Yotta Technologies Inc., is a Delaware Corporation headquartered in New York, New York.[1]

11.    Yotta is an online and mobile application platform which offers participants the chance to play games for entertainment and enjoyment. Yotta also gives away a virtual currency referred to as YottaCash which can be used to gain sweepstakes entries in the form of "Tickets".[2]  Effectively, Yotta offers its users a savings account in which some of the interest payment on deposits are distributed as prizes based on chance.

12.    Defendant Evolve is a bank headquartered in West Memphis, Arkansas.[3]  Evolve wholly or primarily accepts deposits online, often through intermediary financial technology ("fintech") software applications ("apps") such as Yotta, which use Evolve as a banking services provider.

---

[1] New York Department of State, Division of Corporations, https://apps.dos.ny.gov/publicInquiry/EntityDisplay (last accessed on July 17, 2024).

[2] Yotta, "Official Rules", https://www.withyotta.com/official-sweepstakes-rules (last accessed on July 17, 2024).

[3] Federal Deposit Insurance Corporation, "Evolve Bank & Trust", https://banks.data.fdic.gov/bankfind-suite/bankfind/details/1299 (last accessed on July 17, 2024).

13.     Yotta's website states: "Yotta is a financial technology company, not a bank. Banking services provided by Evolve Bank & Trust, members FDIC and Synapse Brokerage LLC Program Banks."[4]  Thus, Defendant Evolve is Yotta's banking provider.

## GENERAL ALLEGATIONS

14.     Yotta is a fintech app, which provides its users with a prize-linked savings account, i.e. a savings account in which some of the interest payment on bank deposits are distributed as prizes based on chance.  Yotta provides its users with the Yotta Credit Card, in which every transaction paid earns the individual a chance to win a prize equal to the transaction's value.[5]  Yotta similarly provides its users with the Yotta Debit Card, in which every transaction paid earns the individual a chance to win a prize equal to the transaction's value.[6]

15.     As a fintech app, critical to Yotta's success is providing customers immediate access to their funds with minimal cost, implicitly acknowledging the fact that "when you live paycheck to paycheck, the tiniest hiccup could throw you for a financial loop. And that's a pretty stressful way to live. Unfortunately, it's also a practice that 59% of Americans uphold…."[7]

16.     For many customers, Yotta is their only account, where they keep all their money.

17.     Yotta provides the banking services through its licensed banking partner, Evolve, which, in turns partners with Synapse Brokerage LLC ("Synapse Brokerage").

## SERVICE DISTRUPTION

18.     Fintech companies, such as Yotta, do not themselves provide banking services.  They

---

[4] Yotta, https://www.withyotta.com/   (last accessed on July 17, 2024).

[5] Yotta, "Credit Sweepstakes Official Rules", https://www.withyotta.com/credit-official-rules (last accessed on July 17, 2024).

[6] Yotta, "Debit Sweepstakes Official Rules", https://www.withyotta.com/debit-official-rules (last accessed on July 17, 2024).

[7] *More Than Half of Americans Live Paycheck to Paycheck. Here's How to Break That Cycle*, The Motley Fool, May 19, 2019 https://www.fool.com/retirement/2019/05/19/more-than-half-of-americans-live-paycheck-to-paych.aspx

rely on companies such as Synapse Financial Technologies Inc. ("Synapse") or its subsidiary Synapse

Brokerage, to connect them with banks, such as Defendant Evolve.

19.    Synapse, established in 2014, was one of the first "banking-as-a-service" (BaaS)

providers. Synapse "arose as a kind of matchmaker to connect startups [such as Yotta] with willing

sponsor banks like Evolve and others." To achieve this, Synapse sets up a "for benefit of" (FBO)

account at the sponsor bank, which pools all the money customers deposit at the fintech. Then its

various platform technologies can manage the individual customer accounts. "No account holder sees

Synapse's handiwork; it operates in the background."[8]  This leaves fintech customers vulnerable and

dependent on Synapse's ability to provide accurate accounting of their deposits to both fintechs, such

as Defendant Yotta, and banks, such as Defendant Evolve.

20.    On April 22, 2024, Synapse filed for Chapter 11 bankruptcy in the U.S. Bankruptcy Court

in the Central District of California. According to Defendant Evolve, at the time of its bankruptcy filing,

Synapse and Evolve were in the final stages of winding down a services agreement that expired by its

terms in September 2023.[9]

21.    According to Evolve, as part of this "wind down" of the Synapse/Evolve relationship,

fintechs, such as Yotta, were required to find a new banking partner.  Yotta and other fintechs decided

to migrate their programs to Synapse Brokerage, a wholly owned subsidiary of Synapse.

22.    On or about May 11, 2024, Evolve lost access to Synapse Brokerage's "dashboard" that

details which accounts hold what amounts of money. Without the dashboard, the accounts of fintech

users could be processed.[10]

---

[8] David Dayen, "Fintech Fight Leads to Hundreds of Thousands of Frozen Accounts",
https://prospect.org/economy/2024-05-23-fintech-fight-frozen-bank-accounts-synapse/ (July 17,
2024).

[9] Evolve, "Evolve Bank & Trust Statement on Synapse Bankruptcy",
https://www.getevolved.com/about/news/evolve-bank-trust-statement-on-synapse-bankruptcy/ (last
accessed on July 17, 2024).

[10] David Dayen, "Fintech Fight Leads to Hundreds of Thosuands of Frozen Accounts",
https://prospect.org/economy/2024-05-23-fintech-fight-frozen-bank-accounts-synapse/ (July 17,
2024).

23.     Thus, without warning, on or about May 11, 2024, Yotta suffered a system wide service outage leaving its customers without access to their accounts.  They remain unable to use or withdraw the funds deposited with Yotta and Evolve. As a result, Yotta customers suffered an array of harms and indignities, finding themselves without money to pay for gas, food and medicine.[11]

24.     During the time the system was down, Yotta customers did not have access to their funds, causing immense hardship, including the inability to pay for basic necessities such as food, rent, electricity, gas and medicine. Customers were unable to pay their household bills, resulting in the assessment of late fees.

25.     A total of at least $112 million in customer savings have been locked in Yotta accounts, which has "thrown upcoming events like surgeries or weddings into doubt," according to Yotta's co-founder Adam Moelis.[12]

26.     As a direct and proximate result of the actions described above, Plaintiffs and Members of the Class have been damaged.

## PLAINTIFF SPECIFIC FACTS

27.     Plaintiff Baumgartner has been a Yotta customer since 2021.  In mid-June, 2024, Baumgartner attempted to withdraw her funds and was denied.  Plaintiff Baumgartner will be getting married in the second half of 2024, and requires the funds held by Yotta to pay her wedding bills.

28.     Plaintiff Lopez has been a Yotta customer since 2023.  He has been unable to access his account since mid-June 2024.  This has caused Lopez significant inconvenience and emotional distress.

29.     Plaintiff Kramm has been a Yotta customer since October 2000.  Kramm attempted to withdraw funds from Yotta in May 2024, and was denied.  Kramm is a recent graduate and is currently looking for a full time position.  He requires the money held in his Yotta account for living expenses.

---

[11] Mobile bank Chime goes dark for millions of customers as it seeks $5 billion valuation, CNBC, October 17, 2019, https://www.cnbc.com/2019/10/17/digital-bank-chime-goes-dark-for-millions-of-customers.html

[12] Hugh Son, "Savings app CEO says 85,000 accounts lcoked in fintech meltdown: 'We never imagined a scenario like this'" CNBC (June 1, 2024), https://www.cnbc.com/2024/06/01/synapse-bankruptcy-yotta-accounts-locked.html (last accessed on July 18, 2024).

Kramm had to borrow money from his friend to sustain himself while he is unable to withdraw funds from Yotta. In addition to financial hardship, this has caused him embarrassment, inconvenience and emotional distress.

30.    In addition to causing hardship and financial damage, the Service Disruption required each of the Plaintiffs to spend valuable time dealing with the myriad of issues caused by not having access to his account – time which they would not have otherwise had to spend but for the Service Disruption.

## CLASS ACTION ALLEGATIONS

31.    Plaintiffs bring this suit as a class action on behalf of themselves and on behalf of all others similarly situated pursuant to Rule 23(b)(2), (b)(3) and (c)(4) of the Federal Rules of Civil Procedure. Plaintiffs seek certification of a Nationwide and state Sub classes defined as follows:

> All Yotta consumers in the United States who were denied access to their accounts and funds beginning April 22, 2024.

32.    Excluded from the Class are the officers, directors, and legal representatives of Defendants, and the judges and court personnel in this case and any Members of their immediate families.

33.    <u>Numerosity</u>. Fed. R. Civ. P. 23(a)(1). The Class Members are so numerous that joinder of all Members is impractical. While the exact number of Class Members is unknown to Plaintiff at this time, upon information and belief, the Service Disruption affected all approximately five million Yotta customers.

34.    <u>Commonality</u>. Fed. R. Civ. P. 23(a)(2) and (b)(3). There are questions of law and fact common to the Class, which predominate over any questions affecting only individual Class Members. These common questions of law and fact include, without limitation:

a.  whether Defendants owed duties to Plaintiffs and the proposed classes, the

scope of those duties and if they breached those duties;

b.  whether Defendants' conduct was unfair or unlawful;

c.  whether Defendants breached their contracts with Plaintiffs and the

proposed classes;

d.  whether the arbitration and class action waiver provisions of the Yotta

Deposit Agreement are unconscionable, illusory, fraudulent or otherwise

invalid;

e.  whether Plaintiffs, the Class and the Subclasses have sustained damages as

a result of Defendants' conduct alleged herein and, if so, what is the proper

measure of such damages; and

f.  whether Plaintiffs, the Class and the Subclasses are entitled to declaratory

and injunctive relief.

35.    Typicality. Fed. R. Civ. P. 23(a)(3). Plaintiffs' claims are typical of those of other Class Members because Plaintiffs lost access to their Yotta accounts like every other Class Member. Plaintiffs' claims are typical of those of the other Class Members because, *inter alia*, all Members of the Class were injured through the common misconduct of Defendants. Plaintiffs are advancing the same claims and legal theories on behalf of themselves and all other Class Members, and there are no defenses that are unique to Plaintiffs. Plaintiffs' claims and those of Class Members arise from the same operative facts and are based on the same legal theories.

36.    Adequacy of Representation. Fed. R. Civ. P. 23(a)(4). Plaintiffs will fairly and adequately represent and protect the interests of the Class in that they have no disabling conflicts of interest that would be antagonistic to those of the other Members of the Class. Plaintiffs seek no relief that is antagonistic or adverse to the Members of the Class and the infringement of the rights and the damages

he has suffered are typical of other Class Members. Plaintiffs have retained counsel experienced in complex consumer class action litigation, and Plaintiff intends to prosecute this action vigorously.

37.     Superiority of Class Action. Fed. R. Civ. P. 23(b)(3). The class litigation is an appropriate method for the fair and efficient adjudication of the claims involved. Class action treatment is superior to all other available methods for the fair and efficient adjudication of the controversy alleged herein; it will permit a large number of Class Members to prosecute their common claims in a single forum simultaneously, efficiently, and without the unnecessary duplication of evidence, effort, and expense that hundreds of individual actions would require. Class action treatment will permit the adjudication of relatively modest claims by certain Class Members, who could not individually afford to litigate a complex claim against large corporations, like Defendants. Further, even for those Class Members who could afford to litigate such a claim, it would still be economically impractical and impose a burden on the courts.

38.     The nature of this action and the nature of laws available to Plaintiffs and the Class make the use of the class action device a particularly efficient and appropriate procedure to afford relief to Plaintiffs and the Class for the wrongs alleged because Defendants would necessarily gain an unconscionable advantage since they would be able to exploit and overwhelm the limited resources of each individual Class Member with superior financial and legal resources; the costs of individual suits could unreasonably consume the amounts that would be recovered; proof of a common course of conduct to which Plaintiff was exposed is representative of that experienced by the Class and will establish the right of each Class Member to recover on the cause of action alleged; and individual actions would create a risk of inconsistent results and would be unnecessary and duplicative of this litigation.

39.     The litigation of the claims brought herein is manageable. Defendants' uniform conduct, the consistent provisions of the relevant laws, and the ascertainable identities of Class Members

demonstrates that there would be no significant manageability problems with prosecuting this lawsuit as a class action.

40.    Adequate notice can be given to Class Members directly using information maintained in Defendants' records.

41.    Defendants have acted or refused to act on grounds generally applicable to the Class and, accordingly, final injunctive or corresponding declaratory relief with regard to the Class Members as a whole is appropriate under Rule 23(b)(2) of the Federal Rules of Civil Procedure.

42.    Unless a Class-wide injunction is issued, Defendants may continue to act unlawfully as set forth in this Complaint.

43.    Likewise, particular issues under Rule 23(c)(4) are appropriate for certification because such claims present only particular, common issues, the resolution of which would advance the disposition of this matter and the parties' interests therein.

## COUNT I - NEGLIGENCE

44.    Plaintiffs repeat, reallege, and incorporate by reference paragraphs 1-43 as though fully set forth herein.

45.    Defendants owed duties to Plaintiffs and the proposed Class as Yotta account holders and paying customers, and as Evolve depositors, through Yotta, to use reasonable care to protect and secure customer funds and provide access to those monies.

46.    Defendants had full knowledge of the types of harm that Plaintiffs and Class Members could and would suffer if they were denied access to the monies in their account.

47.    Defendants breached their duties to Plaintiffs and Class Members by failing to provide customers access to their funds for a prolonged period of time causing hardship to the Plaintiffs and the proposed classes.

48.    Defendants breached their duties to Plaintiffs and Class Members by failing to maintain

the integrity of customer accounts during the Service Disruption resulting in fraudulent charges and inaccurate balance statements.

49.     Defendants failed to use reasonable care in communicating information about the Service Disruption and the security and integrity of account funds.

50.     Plaintiffs and the proposed Class justifiably relied upon the information supplied and representations made by Defendants, and, as a result, engaged in business with Defendants suffered damages and lost money.

51.     As a direct and proximate result of Defendants' negligence, Plaintiffs and the proposed Class were damaged in an amount to be proven at trial.

## COUNT II – UNJUST ENRICHMENT

52.     Plaintiffs repeat, reallege, and incorporate by reference paragraphs 1-43 as though fully set forth herein.

53.     Plaintiffs and the proposed Class have conferred a benefit upon Defendants by depositing monies into a Yotta account, which, by being inaccessible, did not perform as promised and/or did not have the attributes and benefits promised by Defendants.

54.     By their unfair, misleading and unlawful conduct alleged herein, Defendants have unjustly received and retained benefits at the expense of Plaintiffs and the proposed Class, including funds that Plaintiffs and the proposed Class paid to Defendants and funds deposited to Yotta accounts and transferred by Yotta to Evolve as its banking partner.

55.     Under principles of equity and good conscience, Defendants should not be permitted to retain money belonging to Plaintiffs and the proposed Class that they unjustly received as result of its unfair, misleading and unlawful conduct alleged herein without providing compensation to Plaintiffs and the proposed Class.

56.     Plaintiffs and the proposed Class have suffered financial loss as a direct result of

Defendants' conduct.

57.    Plaintiffs and Class Members are entitled to restitution of, disgorgement of, and/or the imposition of a constructive trust upon all profits, benefits and other compensation obtained by Defendants, and for such other relief that this Court deems proper, as a result of their unfair, misleading and unlawful conduct.

### COUNT III – BREACH OF CONTRACT

58.    Plaintiffs repeat, reallege, and incorporate by reference paragraphs 1-43 as though fully set forth herein.

59.    Plaintiffs, and each member of the proposed Class, formed a contract with Defendants at the time they deposited monies with Yotta, which monies were transferred to Evolve as Yotta's banking partner.  The terms of that contract include the promises and affirmations of fact made by Defendants through their marketing materials and Tampa, Florida statements which constitute express warranties, became part of the basis of the bargain, and are part of a standardized contract between Plaintiffs and the members of the proposed Class on the one hand, and Defendants on the other.

60.    In exchange for Defendants' assurance to Plaintiffs and Class Members that they would have access to their financial accounts which would be maintained securely and accurately Plaintiffs and Class Members funded their accounts and utilized banking services which generated revenue for Defendants.

61.    Plaintiffs and Class members gave consideration that was fair and reasonable, and have performed all conditions, covenants, and promises required to be performed.

62.    Defendants breached the terms of this contract, including the express warranties, with Plaintiffs and the proposed Class by denying customers access to their funds and, thus, not providing a product and service which provided the promised benefits as described above.

63.    As a result of Defendant's breach of its contract and warranties, Plaintiffs and the

proposed Class have been damaged in an amount to be proven at trial.

## COUNT IV – CONVERSION

64.    Plaintiffs repeat, reallege, and incorporate by reference each of the foregoing allegations as though fully set forth herein.

65.    Plaintiffs, and each member of the Class, deposited money into their Yotta accounts. Yotta transferred these funds to Evolve as its banking partner.

66.    Defendants knowingly and intentionally exercised control over the monies belonging to Plaintiffs and Class members, retraining funds and denying Plaintiffs and Class members access to their funds.

67.    Because of the unlawful restraint imposed by Defendants, the rights of Plaintiffs and the Class members in their funds were interfered with and their funds could not be used in the matter in which they desired.

68.    Defendants also unlawfully imposed fees upon Plaintiffs and the Class members in connection with these restraints, depriving them of the use and control over their property.

69.    As a result of the foregoing actions of Defendants, Plaintiffs and the proposed Class have been damaged in an amount to be proven at trial.

## COUNT V – BREACH OF FIDUCIARY DUTY
(On Behalf of the Class)

70.    Plaintiffs repeat, reallege, and incorporate by reference paragraphs 1-43 as though fully set forth herein.

71.    Defendants owed a fiduciary duty to Plaintiffs and Class members to protect, secure and retain all monies that lawfully belonged to them.

72.    As alleged herein, Defendants breached those fiduciary duties by restraining funds that they had no right to restrain.

73.    Defendants breached those fiduciary duties by denying Plaintiffs and Class members access to the funds that lawfully belonged to them.

74.    Defendants breached those fiduciary duties by failing to secure and protect all of the funds Plaintiffs and Class members had in their Yotta accounts.

75.    As a result of the foregoing actions of Defendants, Plaintiffs and the proposed Class have been damaged in an amount to be proven at trial.

## PRAYER FOR RELIEF

WHEREFORE Plaintiffs, on behalf of themselves and all others similarly situated, pray for relief as follows:

a. For an Order certifying the Class as defined herein, and appointing Plaintiffs and their Counsel to represent the Class;

b. For equitable relief enjoining Defendants from engaging in the wrongful conduct complained of herein;

c. For an award of damages, including actual, nominal, and consequential damages, as allowed by law in an amount to be determined;

d. For an award of punitive damages;

e. For an award of attorneys' fees, costs, and litigation expenses, as allowed by law;

f. For prejudgment interest on all amounts awarded; and

g. Such other and further relief as this Court may deem just and proper.

## DEMAND FOR JURY TRIAL

Plaintiffs hereby demand a trial by jury on all issues so triable.

July 22, 2024.                              Respectfully submitted,

1

2

3

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

/s/ Ronald Podolny
John A. Yanchunis*
jyanchunis@forthepeople.com
Ronald Podolny
ronald.podolny@forthepeople.com
**MORGAN & MORGAN COMPLEX
LITIGATION GROUP**
201 North Franklin Street 7th Floor
Tampa, Florida 33602
(813) 223-5505 (tel)
(813) 223-5402 (fax)

*Counsel for Plaintiff and the Putative Classes*

*\* Pro Hac Vice application to be submitted*