EXHIBIT A



Synapse Financial Technologies, Inc.

Consumer Interest Checking Account Agreement

Example Agreement

Last Revised: May 2023

*Synapse Financial Technologies, Inc. ("Synapse") is providing this Agreement to you on behalf of Bank. Synapse is an agent of Bank for some purposes and will be responsible for carrying out some of our responsibilities under this Agreement as our agent, including receiving notices from you, responding to any notices relating to questions or complaints concerning your Account, and carrying out other responsibilities described in this Agreement. Accordingly, where we are responsible for matters under this Agreement, those matters may be handled either by Synapse or by us directly.*

This Consumer Interest Checking Account Agreement (this "Agreement") governs the interest-bearing consumer demand account (the "Account" or "Interest Checking Account") made available to you by Evolve Bank & Trust ("Bank"), a member of the Federal Deposit Insurance Corporation (the "FDIC"), in partnership with Synapse, as a technology service provider of Bank. Access to your Account and the services under this Agreement is available only through the website and/or phone application (the "App") of the Yotta Saving ("Platform") that is responsible for making the services available to you and as a result, some services under this Agreement may not be available to you. You should review your agreement with Platform for a complete list of services available. As used in this document the words "we", "our", and "us" refer to Bank and Synapse, our successors, affiliates, or assignees, and the words "you", and "your" refer to the account holder(s) and anyone else with the authority to deposit, withdraw, or exercise control over the funds in the Account. For purpose of this Agreement, the term "Account" may also collectively include Sub-Deposit Accounts of such Account.

This Agreement, along with any other documents we give you pertaining to your Account(s), is a contract that establishes the rules that govern your Account(s) with us. This Agreement covers any account opened through Platform that you may have with us now, or in the future, and that is used primarily for consumer purposes. This Account is not designed for business use, and we may close the account if we determine it is being used for business purposes. If you sign a written or electronic signature card or open an Account with us, you agree to the most recent version of this Agreement, which is available to you at https://www.withyotta.com/terms or by calling us at the number listed on the last page of this Agreement. This Agreement may be changed by us from time to time, as  described in Section 7.8 below. This Agreement also includes Bank's Privacy Policy, as referred to in Section 2.10 below, any other agreement you enter into with us, and any other terms and conditions made available to you by us on Platform's website or the Mobile App (collectively the website and Mobile App are the "Platform Website").

Access to your Account and the services offered under this Agreement is limited to your use of the Platform Website and/or the Mobile App unless we notify you otherwise. **YOU UNDERSTAND THAT BY OPENING AN ACCOUNT THROUGH THE PLATFORM WEBSITE, YOU AUTHORIZE BANK TO ACCEPT ALL INSTRUCTIONS PROVIDED TO BANK BY PLATFORM OR SYNAPSE ON YOUR BEHALF.**

## Truth in Savings Disclosures

| | |
|---|---|
| Initial Deposit and Balance | There is no initial deposit or minimum balance required to open this Account. |
| Interest Rate | 0.010% |
| Annual Percentage Yield | 0.01% |

| Fees to Bank | There are no fees charged by us and applicable for this Account. You may be responsible for paying fees to the Platform. |
|---|---|
| Transaction Limitations | The Transaction Limitations for your Account are set forth in Section 4. |
| Additional Fee Disclosure | As noted above, you are not responsible for paying any fees to Bank for holding this Account. You may be responsible for paying fees to the Platform as provided in your agreement with Platform. You should refer to your agreement with Platform to understand how fees are charged. |

This is an interest-bearing account. There is no initial deposit required to open an Account. You may deposit any amount after you open the Account. The interest rate and Annual Percentage Yield is correct as of today's date.

1. **Consent to Use Electronic Signatures, Communications and Statements.**

    1.1. **Your Consent to Electronic Signatures. By accepting this Agreement, you understand that: (i)** electronically signing and submitting any document(s) to Synapse legally binds you in the same manner as if you had signed in a non-electronic form, and (ii)  the electronically stored copy of your signature, any written instruction or authorization and any other document provided to you by Synapse is considered to be a true, accurate and complete record, legally enforceable in any proceeding to the same extent as if such documents were originally generated and maintained in printed form. You agree not to  contest the admissibility or enforceability of Synapse's electronically stored copy of this Agreement and any other documents.

    1.2. **Your Consent to Electronic Communications**. To the fullest extent permitted by law, this Agreement, account statements, notices, legal and rate disclosures for your Account, updates and changes to this Agreement, or other service agreements and other communications (collectively, "Communications") from us to you regarding your Account(s) and related services with us may be provided to you electronically,  and you consent and agree to receive all those communications in an electronic form. Electronic Communications may be posted on the pages within the Platform Website and/or delivered to your email address. You may print a paper copy of or download any electronic communication and retain it for your records. All Communications in electronic format will be considered to be "in writing," and to have been received on the day of posting, whether or not you have received or retrieved the Communication. We reserve the right to provide Communications in paper format.

    Your consent to receive Communications electronically is valid until you revoke your consent by notifying us of your decision to do so. If you revoke your consent to receive Communications electronically, Platform will terminate your right to use the Platform Website, including the Mobile App, or to obtain or maintain Account(s) and related services, and you accept sole liability for any losses, liabilities, cost, damages and expenses resulting from such an involuntary termination of your Account(s) and related services, to the extent permitted by law.

    1.3. **Your Review of Communications.** Please review promptly all Communications we deliver or make available to you. If Communications are mailed to you, they will be delivered to you at the postal address shown in our records. If Communications are sent to you electronically, they will be delivered to you at the email address shown in our records or made available to you on the Platform Website and/or Mobile App. We will retain printable versions of your Account statements for seven (7) years or longer periods as may be required by applicable law. You agree to give Platform notice of any change of your postal or email address.

1.4.  **Reporting to You (Statements).** Statements will be made available to you to view and/or print on the Platform Website and/or Mobile App (if available). Platform will send an email notification when the statements are available online on a periodic basis at approximately monthly intervals. The Account Statement will describe each item, date of credit or debit, and the respective amount. Electronically delivered Statements will provide all information available in paper statements.

    1.4.1.  Account statements will be considered to be correct unless you notify us, through Synapse, of any errors within sixty (60) days of becoming available. Carefully review your statement each statement cycle and notify us of any errors within sixty (60) days of your statement becoming available. Bank will not be liable to you for any error that you do not report to Bank within that period of sixty (60) days.

2.  **Account Basics.**

    2.1. **Eligibility.** The Account is available to consumers who are citizens, permanent residents or non-permanent resident alien in the United States on a valid long-term visa, at least 18 years of age, and with a valid Social Security Number or a Tax Identification Number. All deposits and withdrawals must be in U.S. dollars only. **You must agree to accept electronic, rather than paper statements, as provided above. This means; (i) you must keep us supplied with your valid email address; and (ii) you must agree to accept electronic delivery of all account communications (such as end-of-year tax forms and electronic statements). If you do not do so, you may not open an Account. If you withdraw your consent, we may close your Account.**

        2.1.1.  You authorize us or Synapse to verify your credit and employment history and/or have a credit reporting agency prepare a credit report on you, as an individual.

    2.2.  **The Interest Checking Account.** This Account consists of the interest-bearing account used to hold your deposits and make online transactions, as provided herein.

    2.3.  **Important information about procedures for opening a new Account.** To help the government fight the funding of terrorism and money laundering activities, Federal law requires all financial institutions to obtain, verify, and record information that identifies each person who opens an Account. What this means for you: When you open an Account, we will ask for your name, address, date of birth, and other information that will allow us to identify you. We may also ask to see a copy of your driver's license or other identifying documents.

    2.4.  **Account.** You will access your Account via the Platform Website. If made available by Platform, the Account may include the use of a Debit Card to make payments and transfers to third parties. Use of a Debit Card will be subject to additional terms and conditions contained in a Cardholder Agreement. The Cardholder Agreement will be considered part of this Agreement.

    2.5.  **Password Security.** You are responsible for maintaining adequate security and control of any and all User IDs, Passwords, hints, personal identification numbers (PINs), or any other codes that you use to access the Account. Do not discuss, compare, or share information about your account number or password unless you are willing to give them full use of your money. Any loss or compromise of the foregoing information and/or your personal information may result in unauthorized access to your Account by third-parties and the loss or theft of any funds held in your Account and any associated accounts, including your Account. Checks and electronic withdrawals are processed by automated methods, and anyone who obtains your account number or access device could use it to withdraw money from your account, with or without your permission. You are responsible for keeping your email address and telephone number up to date in order to receive any notices or alerts that we may send you. We assume no responsibility for any loss that you may sustain due to compromise of your account login credentials due to no fault of ours and/or your failure to follow or act on any notices or alerts that we may send to you. If you believe your Account information has been compromised, or that someone has transferred or may transfer money from your account without your permission, contact us immediately, through Synapse, at help@synapsefi.com or call at +1(415) 688-2943. You agree to promptly review all Account and transaction records and other Communications that we make available to you and to promptly report any discrepancy to us.

2.6.  **Titling and Ownership**. The Account may be owned and titled only in the name of one (1) person who shall solely retain the right to direct the deposit or transfer of funds. The Account cannot be owned or titled jointly, by an organization, as Payable on Death ("POD") or "In Trust For" ("ITF").

2.6.1.  <u>**Joint Accounts**</u>. An Account may be opened as a joint account ("Joint Account") to be held jointly by you and others. All Joint Accounts are held with right of survivorship and in the name of two or more persons; each of the persons listed on the account intends that when you die the balance in the account (subject to any previous pledge to which we have agreed) will belong to the survivor(s) even if the decedent had a will directing disposition to someone else. If two or more of you survive, you will own the balance in the account as joint tenants with survivorship and not as tenants in common.

2.6.2.  The Account cannot be owned or titled jointly, by an organization, as Payable on Death ("POD") or "In Trust For" ("ITF").

2.6.3.  <u>**Exception for Uniform Transfer to Minor Accounts**</u>. **An Account may be opened as a custodial account (a "Custodial Account") for the benefit of a minor pursuant to the Tennessee Uniform Transfers to Minors Act, Tenn. Code Ann. 35-7-101 *et seq*.** As the custodian for such an Account, you agree, acknowledge and assume all responsibilities as custodian under applicable laws and regulations. You agree you will not access the Custodial Account, transfer funds into or out of the Account or use the Account for any reason other than for the benefit of the person over whom you have custody pursuant to your responsibilities as custodian. You release and hold us harmless from any liability for any use or transactions made on the Account that are in violation of these terms, this Agreement or applicable law.

2.6.4.  <u>**Death or Incapacitation**</u>. You or your appointed party, designee, or appointed individual agree to notify us promptly if you become legally incapacitated, are deemed incompetent, or die. We may continue to accept deposits and process transaction instructions into and from your Account until we are: (a) notified of your death or adjudication of incompetency and (b) have a reasonable opportunity to act on that knowledge. You agree that, even if we have knowledge of your death, we may pay or process transactions on your Account executed on or before the date of death for up to ten (10) days after that date unless ordered to stop payment by someone claiming interest in the Account. We may require additional documentation to confirm any claims made on the Account.

2.7.  **Power of Attorney**. You may wish to appoint an agent to conduct transactions on your behalf. We have no duty or agreement whatsoever to monitor or insure that the acts of the agent are for your benefit. We will not be required to follow the instructions of your designated attorney-in-fact (your "Agent") unless you have furnished us a power of attorney in a form or under circumstances acceptable to us. Unless you revoke it, a power of attorney continues until your death or the death of the person given the power. If the power of attorney is not "durable," it is also revoked when you become incompetent. We may require your Agent to sign an affidavit stating that the power of attorney presented to us is a true copy and that, to the best of the Agent's knowledge, you are alive and competent and that the relevant powers delegated to the Agent have not been amended or terminated. We may continue to honor the transactions of your Agent until: (1) we have received written notice of the termination of the authority or notice of your death, and (2) we have a reasonable opportunity to act on that notice. You agree not to hold us responsible for any loss or damage you may incur as a result of our following instructions given by an Agent acting under a valid power of attorney.

2.8. **Our Relationship with You**. This Agreement and the relationship between you and the Bank is that of debtor and creditor, and the Bank owes no fiduciary duty to you. **YOU UNDERSTAND AND AGREE THAT THE PRODUCTS AND SERVICES OFFERED BY PLATFORM ARE NOT ENDORSED OR GUARANTEED BY BANK AND BANK ASSUMES NO LIABILITY FOR PRODUCTS OR SERVICES PURCHASED OR OFFERED BY PLATFORM AND PLATFORM USERS OTHER THAN THE SERVICES PROVIDED IN THIS AGREEMENT.** You understand that Platform and Bank are not partners, affiliates or joint venturers with each other. Nothing in this Agreement is intended to be read or understood as making Platform and Bank partners, affiliates or joint venturers or impose any liability as such on either of them. Unless otherwise expressly stated in this Agreement, Platform has no authority to act or represent Bank in any way. Bank provides the services under this Agreement in part through one or more service providers that Bank has engaged to render some or all of such services to you on Bank's behalf, including Synapse. You agree that Synapse and any other such service providers are third-party beneficiaries of this Agreement, which means they can enforce the Agreement against you. You understand and agree that Bank is exculpated from any and all liability arising with respect to any of the Bank services or other aspects of this Agreement to the fullest extent permitted by law.

2.9. **Fee Disclosure**. You are not required to pay Bank any fees in connection with this Account. Synapse will pay fees to Bank for processing your payments and checks at least enough to cover the costs associated with such processing. Platform may charge additional transaction fees and other fees associated with the services provided to you as provided in your agreement with Platform. You should refer to your agreement with platform to understand how fees are charged.

2.10. **Location of the Account**. Your Account is established in Memphis, Tennessee.

2.11. **Privacy Policy**. Bank's privacy policy is available at https://synapsefi.com/evolve-privacy and is considered part of this Agreement. By executing this agreement, you acknowledge that you have read and accepted Bank's privacy policy.

2.12. **Internet Gambling; Illegal Transactions**. We may, but are not required to, deny authorization for any internet gambling transactions. You agree not to use your Account or our services for online gambling or any illegal activity. We may refuse to process any transaction that we believe may violate the terms of this Agreement or applicable law. You acknowledge and agree that we have no obligation to monitor, review or evaluate the legality of your transactions and Account activity. You agree that using Bank services or your Account for illegal activity will be deemed an action of default and/or breach of contract and, in such event, our services and/or any of your Accounts may be terminated at our discretion. You further agree that should illegal use occur, you waive any right to sue us for such illegal use or any activity directly or indirectly related to it, and you agree to indemnify and hold us harmless from any suits, legal action, or liability directly resulting from such illegal use. To the fullest extent permitted by law, you agree to pay for any transaction that you authorized, even if that transaction is determined to be illegal.

2.13. **Freezes, Blocking or Closing Accounts Due to Irregular or Unlawful Activities**. You agree that if Bank suspects that any irregular, unauthorized, or unlawful activity may be occurring in connection with your Account, Bank may "freeze" or place a hold on the balance in such Account pending an investigation of such activities. If Bank freezes your Account, it will give any notice required under the circumstances by the laws governing the Account. If investigation confirms Bank's suspicions of irregular, unauthorized, or unlawful activity then, notwithstanding anything to the contrary in this Agreement, Bank may immediately close your Account, and may also close any or all other Accounts, if necessary, to comply with applicable law. You agree that Bank may also freeze, block, or close your Account as necessary in order to comply with regulations issued by the United States Department of Treasury's Office of Foreign Assets Control ("OFAC").

3. **Interest Information.**

   3.1. **Which Accounts Bear Interest**. Your Account will bear interest as described in this Section 3.

3.2.  **Rate Information**. The current interest rate and Annual Percentage Yield ("APY") for the Account appear in the Truth in Savings Disclosures. This is a variable rate account. We may, at our discretion, change the interest rate and APY for your Account at any time; this may be changed daily. Additionally, the interestrate is dependent on factors such as the current Federal Funds Rate and will be adjusted commensurately with changes to the relevant factors.

3.3.  **Accrual of Interest**. Interest begins to accrue no later than the business day the deposit is applied to your Account. Interest will be compounded daily and credited to your Account on a monthly basis. Account interest is calculated using the daily balance calculation method. This method applies a daily periodic rate to the principal balance in the Account each day. There are no minimum or maximum balance restrictions on your Account.

3.4.  **Forfeit of Uncredited Interest**. If you withdraw funds from your Account after interest has accrued but before it is credited to your Account, you will forfeit that interest, and it will not be credited to your Account.

4.   **Funding and Withdrawing from your Account.**

4.1.  **Deposits to the Account**. You can make deposits into your Account using any of these methods:

| Transaction Type | Frequency and Dollar Amounts/Per Day* |
| --- | --- |
| Direct deposits or ACH Transfers initiated from an outside financial institution | No limit to the number of times per calendar day<br><br>No maximum dollar limit |
| Wires initiated from an outside financial institution | No limit to the number of times per calendar day<br><br>No maximum dollar limit |
| ACH Transfers (debit) initiated from Us or a Linked Bank Account | No limit to the number of times per calender day<br><br>$13,005.00 daily limit |
| Deposits using an external debit or credit card from an outside financial institution | No limit to the number of times per calender day<br><br>$10,005.00 daily limit |

* The limits included here are the lowest limits allowed for transactions. However, we reserve the right to allow you to transact higher volume than the limits defined herein at any time without prior notice. In certain cases, for security reasons, we may lower your limits upon notice to you at the time you attempt to initiate a transaction.

4.1.1. **Linking Bank Accounts**. If enabled by Platform for your Account, you may link an account with us or an external account at a third-party financial institution for online transfers between your linked account(s) and your Account. If enabled by Platform, you may link your external account(s) with your Account by (i) logging into your financial institution on Platform's Website or Mobile App, or (ii) by providing the account and routing details for the external account and verifying the two (2) micro deposits we send to your external account the next business day. We may also verify your control of the external account by requiring you to submit proof of ownership of the external account(s). All linked accounts must be with financial institutions in the United States. We may decline the use of any external account that we believe may present a risk to you and/or us. By linking your external account to your Account, and by subsequently logging into your linked account(s) through the Platform Website or Mobile App, you authorize us to view your account history and profile, including, but not limited to, your account and routing details, authentication details, balance, transaction history, contact information, and other related information made available by such external financial institution; and you understand this information may be used to transact on your behalf and perform other services subject to our Privacy Policy. When adding an external account, you represent and warrant that you are owner of and have the right to access, use and authorize us to use the account for information and funds transfer purposes. If any of your linked accounts has a joint account holder, you represent and warrant that the joint account holder has consented for you to represent both you and them, and to use the external account with the Platform service. If you do not have such consent, you should not use that external account and we will terminate your use of the linking service if we are notified of such a situation. If you close any of your external accounts, you are responsible for removing it as an account eligible for the linking service to avoid any transaction failure and possible charges related to a failed transaction. We are not responsible for any acts or omissions by the external financial institution or other provider of any linked external bank account, including, without limitation, any modification, interruption, or discontinuance of any linked external bank account by such financial institution, service provider or Platform.

4.1.2. **Direct Deposits**. If enabled by Platform for your Account, your Account number and bank routing number may be used for the purpose of initiating direct deposits to your Account. The recipient's name on any direct deposit(s) we receive must match your name. Any direct deposits received in a name other than the name registered to the Account will be returned to the originator. If your Account number changes you must immediately notify your employer or any other payors. You must provide them with the new Account number to ensure that your direct deposit activity continues uninterrupted.

4.1.3. **Account Funding with Cards**. If enabled by Platform for your Account, you may fund your Account with your debit or credit card. To fund your Account using a credit or debit card you must have either (i) a credit card issued by a U.S.-based bank or financial institution bearing the trademark of MasterCard International Inc. ("MasterCard"), Visa Inc. ("Visa"), or DFS Services, LLC ("Discover"), or (ii) a valid debit card issued by a U.S.-based bank or financial institution bearing the Visa, MasterCard or Discover logo. You may not use prepaid cards or gift cards with your Account. Please keep your card account information current. If your card account number changes or your card expiration date changes, we may acquire that information from our financial services partner and update your account accordingly. You may dispute a payment made with your card issuer if you used a debit or credit card to fund your payment. Your rights with the card issuer may be broader than those available under this Agreement.

**4.1.4.** **Remote Deposit Capture ("RDC")**. If enabled by Platform for your Account, you may make deposits into your Account by using the Mobile App to take a legible picture of the front and back of a negotiable check and transmitting such images. The RDC service is for non-business, personal use in accordance with this Agreement. We will attempt to collect the item by presenting the image or converting the image into a digital representation of the original check (a "Substitute Check"). Unlike traditional check deposits, you retain the original paper check when you use Remote Deposit Capture. We request you to retain the original check until final settlement of the check. There is currently no charge for using RDC; should there be charges in the future, you will be given appropriate notice. Your wireless telecommunications provider for your wireless device or other third parties that you may utilize may impose fees to make that device data-capable, to exchange data between the device and the Platform, or based on the location of your use. By using the RDC service, you agree that you will be bound by the terms of this Agreement and will follow any and all other procedures and instructions for use of RDC that we may establish from time to time.

**4.1.4.1.** **Eligible Items**. You agree to scan and deposit only checks, as that term is defined in Federal Reserve Regulation CC ("Reg. CC"). You agree that the image of the check transmitted to us shall be deemed an "item" within the meaning of Article 4 of the Uniform Commercial Code as adopted in Tennessee. You agree that you will not use RDC to scan and deposit any of the following checks or other items:

(1)  Checks or items payable to any person or entity other than you, including a check payable to "Cash".
(2)  Checks or items containing obvious alteration to any of the fields on the front of the check or item, or which you know or suspect, or should know or suspect, are fraudulent or otherwise not authorized by the owner of the account on which the check or item is drawn.
(3)  Checks or items previously converted to a substitute check, as defined in Reg. CC.
(4)  Checks or items drawn on a foreign bank or payable in a foreign currency.
(5)  Checks or items that are demand drafts or remotely created checks (checks lacking the original signature of the drawer).
(6)  Checks that have been previously returned stop payment or account closed.
(7)  Checks or items dated more than six months prior to the date of deposit.

**4.1.4.2.** **Image Quality**. The image of a check or item transmitted to us using RDC must be legible. The image quality of the items must comply with the requirements established from time to time by ANSI, the Board of Governors of the Federal Reserve Board, or any other regulatory agency, or other clearinghouses.

**4.1.4.3.** **Necessary Endorsement**. The checks to be deposited via RDC shall be properly endorsed in the same manner in which it is made payable to you and with the restrictive endorsement: "For mobile deposit only."

**4.1.4.4.** **Cut-off Time**. Receipt of your check image must be received by 4:00 p.m. Pacific Time, for us to consider that day to be the day of your deposit. Any check image received by us after 4:00 p.m. Pacific Time is considered as a deposit made on the next business day we are open.

**4.1.4.5.** **Receipt of Items**. We reserve the right to reject any item transmitted through RDC, at our discretion, without liability to you. We are not responsible for items we do not receive or for images that are dropped during transmission. You agree to receive notices electronically relating to RDC, whether or not you have previously agreed to accept electronic disclosures for any of your Accounts. An image of an item shall be deemed received when you receive an electronic confirmation from us that we have received the image. Receipt of such confirmation does not mean that the transmission was error free or complete.

4.1.4.6. **Representations and Warranties; Indemnification**. As to all items transmitted to us, you represent and warrant that: (i) you will comply with the terms and conditions set forth in this Agreement; (ii) you will only transmit eligible items; (iii) you have good title to each check and item and no defense of any party to the check is good against you; (iv) the original check, or a paper or electronic representation, has not previously been deposited for collection with us or any other financial institution, and no depositary bank, drawee, or drawer will be asked to pay a check that it already has paid; and (v) you have no knowledge or notice of information to indicate that the transaction is fraudulent. You agree to indemnify and hold us, our affiliates, directors, officers, employees, and agents harmless from and against all losses, liabilities, cost, damages and expenses (including reasonable attorneys' fees and cost of litigation) to which we may be subject or that we may incur in connection with any claims that might arise from or out of your use of RDC.

4.1.4.7. **Deposit Errors**. You agree to notify us, through Synapse, of any suspected errors regarding items deposited through RDC right away, and in no event later than 40 days after the applicable account statement is sent or made available to you. Unless you notify us within 40 days, such Statement regarding all deposits made through RDC shall be deemed correct, and you are prohibited from bringing a claim against us for such alleged error.

4.1.5. **No Deposits in Cash, Paper Checks or Foreign Currency**. Bank will only accept funds deposited electronically through Platform. We are not liable for any deposits, including cash, lost in the mail, lost in transit, or not received by us. We do not accept deposits in cash, personal checks, cashier's checks, money orders or in foreign currency. If we receive any of those instruments by mail, we will return it to the address we have for you on file. Only deposits made in accordance with the terms of this Agreement will be accepted.

4.1.6. **Our Right to Charge Back Deposited Checks or Electronic Transfers**. If you deposit a check or receive an electronic transfer as provided in this Agreement and (i) the paying bank returns it to us unpaid; (ii) the paying bank or the issuer of a check demands that we repay them because the check was altered, forged or unauthorized, is missing a signature or endorsement, or has a forged endorsement; or (iii) the sending bank or the originator of an item demands that we return the item because it was unauthorized, sent to the wrong account number or procured by fraud, we may pay the return or demand, and subtract the funds from your Account. If we have reason to believe that any of the events in the previous sentence have occurred or may occur or that the check or other item should not have been paid or may not be paid for any other reason, we may place a hold on the funds or move them to a non- customer account until we determine who is entitled to them.

4.1.7. **Right to Reject Any Deposit**. We may refuse any check for deposit, with or without cause, or may elect to take a check on a collection basis only. We are under no obligation to accept any item, wire, electronic funds transfer, or other transaction for deposit to your Account or for collection, and we may refuse to cash or give value for any such item. We may restrict access to any deposit credited to your account that violates any laws of the United States, including those giving rise to OFAC sanctions. Unless Bank specifically permits you to do so, you may not deposit any substitute check that has not been previously handled by a bank in the collection process. This means you cannot deposit a substitute check you create, or one that is created by another person, unless we enter into an agreement to do so. Nevertheless, if a substitute check is received for deposit, you will be responsible for any losses you or another person suffers relating to that substitute check.

4.2. **Withdrawals from the Account**. You can make withdrawals from your Account using any of these methods:

| Transaction Type | Frequency and Dollar Amounts/ Per Day* |
|---|---|

| ACH Transfers (credit) to an external financial institution or Linked Bank Account tht is initiated by Us | No limit to the number of times per calendar day<br>No maximum dollar limit |
| --- | --- |
| Wires (if enabled by Platform to your Account) | No limit to the number of times per calendar day<br>No maximum dollar limit |
| Bill Pay Checks | No limit to the number of times per calendar day<br><br>$10,005.00 daily limit |
| Debit Card Payments | No limit to the number of times per calendar day<br><br>POS daily limit: $10,005.00<br><br>ATM daily limit: $500.00 |

\* The limits included here are the lowest limits allowed for transactions. However, we reserve the right to allow us to transact higher volume than the limits defined herein at any time without prior notice. In certain cases, for security reasons, we may lower your limits upon notice to you at the time you attempt to initiate a transaction.

4.2.1. **Bill Pay via Check**. If enabled by Platform to your Account, you will be able to authorize us to make bill payments via check on your behalf to third parties. You may not have access to this feature until your Account has been open for a minimum of thirty (30) days. To initiate a bill payment using Bill Pay via Check, you must provide the name and mailing address of each individual or company you wish to pay. You must provide such information about each payee as we may request from time to time, and in any event sufficient to properly direct a payment to that payee and permit the payee to identify the correct account to credit with your payment. You may not make a payment of alimony, child-support, taxes, or other governmental fees or court-directed payments via Bill Pay via Check. We do not recommend using online bill payment services to fund brokerage or investment services. We may impose a dollar amount limit on bill payment transactions and will notify you in the event such a limit is put in place. Loan payments made via Bill Pay via Check, other than the amounts due, cannot be designated as principal, interest or payoff. Once a payment is authorized, the payment amount will be immediately deducted from your Account balance. Payments made using Bill Pay via Check take the form of a paper check and are sent to the payee using standard U.S. Postal Service mail. Please allow three to nine (3-9) business days for delivery of the check. Payments can only be sent to addresses located within the fifty (50) states of the U.S. Bill Pay via Check payments are processed daily by 9 a.m. Pacific Time. Check payments initiated after this time will be processed the next business day. Bank reserves the right to refuse to process payments to any individual or company. If the decision is made to refuse a payment, Bank will notify you on or before the next business day.

4.2.1.1. **Returned or Refused Checks**. Checks may be refused or returned by the individual or company to whom the payment was issued. The determination to accept this method of payment is at the discretion of the recipient. The U.S. Postal Service may also return payments in cases of expired or invalid addresses. If the check payment is returned for any reason, the payment will be voided and the full amount credited to your Account the next business day.

4.2.1.2. **Uncashed Checks**. If we remit your payment to a payee by mailing your payee a check drawn on your account and the check has not been presented for payment within our payment cut-off period, we will investigate the status of the check. If the Payee cannot be reached, or the payment is to an individual and the check has not been presented for payment by ninety (90) days after the date the funds are withdrawn from your account, we will place a stop payment order on the check and refund your Account.

4.2.1.3. **Cancelling a Check Payment. You may cancel a single check payment as long as it has not been presented for payment by logging into Platform App or by emailing Synapse at help@synapsefi.com. Funds from any cancelled check will be credited to your Account on the next available business day. Same- day payments (*i.e.*,** payments entered and initiated on the same date) cannot be modified or deleted.

4.2.1.4. **Liability for failure to stop payment**. If you request cancellation of a Bill Pay via Check payment three (3) three business days or more before it is scheduled to be initiated, and we do not cancel it in time, we will be liable for your losses or damages.

4.2.2. **Checks Issued by a Third-Party**. We do not support the issuance of personal checks to access funds in this Account. We reserve the right to refuse to make payments initiated via a check printed by a third-party service provider and not via the Bill Pay via Checks services provided herein.

4.2.3. **No Overdrafts**. You are not permitted to overdraw your Account. If the available balance in your Account is not sufficient to cover any payment or withdrawal you have authorized, we may refuse to process the payment or withdrawal. If your Account balance becomes negative for any reason, you must make a deposit immediately to cover the negative balance. If your Account has a negative balance and you have another account with us, we reserve the right to exercise our right to set off. See Section 4.2.4 below for details. If your Account has a negative balance for sixty (60) calendar days or more it will be closed. If you fail to pay the amount of any overdraft, we reserve the right to refer your overdrawn account to an attorney for collection, and you agree to pay all reasonable expenses, including, but not limited to, reasonable attorney's fees and court costs incurred by us as a result of your account being overdrawn.

4.2.4. **Right to Set Off**. If your Account balance becomes and remains negative, we can use the funds in any of your accounts with us to repay the negative balance in your Account without any further notice to or demand on you. Moreover, we have the right to set-off any liability, direct or contingent, past, present or future that you owe against any account you have with us. Further, you grant us a lien on and security interest in the funds on deposit in each of your account(s) as security for all of your liabilities and obligations to us, now or in the future.

5. **General Funds Availability.**

5.1. **Availability**. We make funds available according to the type of deposit and when the funds are applied or credited to your Account. Some types of deposits may not be available for immediate use. When we delay the availability of funds or place a hold on a deposit made to your Account, you may not withdraw those funds, and we will not use them to pay any debits, such as ACH transfers or payments, check payments or, if available, transactions using your debit card during the hold period. We have the right to refuse any deposit. If final payment is not received on any item you have deposited into your Account, or if any direct deposit or ACH transfer is returned to us for any reason, you agree to pay us the amount of the returned item. The length of the delay in the availability of funds will vary depending on the type of deposit.

5.2. **Business Days.** The length of the delay in the availability of funds is counted in business days from the day your deposit is applied to your Account. For purposes of these disclosures, our business days are Monday through Friday. Federal holidays are not included. Deposits received after the cut-off times provided in this Agreement or on a day Bank is not open will be processed the following business day that Bank is open.

5.3. **Same Day Availability**. Funds received from preauthorized electronic payments such as payroll direct deposits, or other preauthorized electronic payments will be available on the day the deposit is applied to your Account. ACH Credits received from an external bank account will be applied to the Account when we have verified the external account and received payment on collected funds. Once the funds are applied to the Account, they will have same day availability.

5.4. **Longer Availability**. Electronic transfers depositing into the Account initiated through the Platform may take up to five (5) business days from the date of the initial request but will post on the payment date of the deposit once the money has reached us.

5.5. **Availability of Mobile Deposits.** Checks deposited through the RDC service are not subject to the funds availability requirements of Regulation CC. Checks deposited using the RDC service will generally be made available in your Account no later than six (6) business days after the day you made the deposit. In some cases, we may not make the funds available in accordance with the general policy for other reasons, including, but not limited to, if we have reasonable cause to doubt collectability of the check. The length of the delay will be counted in business days from the day of your deposit. We reserve the right to change the limits on the amount(s) and/or number of deposits that you transmit using RDC and may modify these limits from time to time.

5.6. **Longer Delays for Check Deposits**. In some circumstances, a longer hold period may apply before funds deposited by check are available in your Account. For example, a longer delay may apply in the following cases: (i) we believe a deposited check will not be paid; (ii) you deposit one or more checks totaling $5,000 or more in one day; (iii) you redeposit a check that has been previously returned unpaid; (iv) your Account had a negative balance anytime in the previous six (6) months; or (v) we experience an emergency, such as failure of communication or computer delays. We will notify you if we delay your availability to withdraw funds and we will tell you when the funds will be available for withdrawal no later than the seventh business day after the day of your deposit.

6. **Electronic Funds Transfer Disclosures.**

   6.1. **Electronic Transfers via ACH**. You may originate transfers to and from your Account via ACH as provided in Section 4 of this Agreement. These requests must be made via the Platform. In the case of electronic transfer requests from an external bank account to your Account, we will complete such requests only if the funds are being transferred from your linked external account.

      6.1.1. **Next Day ACH. Cut-off Time**. The cut-off time for scheduling a next day ACH transfer is 4:00 p.m. Pacific Time. Any next day ACH transfer scheduled after the cut-off time will be treated as if it were scheduled on the next business day. In some circumstances, transactions may be delayed for risk or compliance reasons.

      6.1.2. **Same Day ACH. Cut-off Time**. The cut-off time for scheduling same day ACH transfers (if enabled on your Account) is 9:00 a.m. Pacific Time. If enabled by Platform, the Same Day ACH means that the transfer will be performed within one (1) business day. Any same day ACH transfer scheduled after the cut-off time will be treated as if it were scheduled as next day ACH transfer. In some circumstances, transactions may be delayed for risk or compliance reasons.

   6.2. **Electronic Transfers Using Your Account Number**. If enabled by Platform, you may authorize a third-party to transfer funds to and from your Account by providing your account number and your routing number to such third-party. Your account information should only be provided to trusted third-parties authorized to initiate the electronic funds transfers.

   6.3. **Debit Cards and ATM Services**. If enabled by Platform, you may obtain a debit card that can be used for purchases on points of sales and/or withdrawals at ATMs. The use of your debit card to initiate electronic transfers is subject to the term and conditions of your Cardholder Agreement.

   6.4. **Types of Electronic Transfers Available.**

      6.4.1. You may arrange with another party, such as your employer or a government agency, to electronically deposit funds on a one-time or recurring basis directly to your Account.

      6.4.2. You may arrange with another party to make one-time or recurring charges to your Account to a make a utility payment or to pay other bills.

6.5. **Limitations on Transfers, Amounts and Frequency**. Your right to make electronic funds transfers is subject to the limits established in Section 4 of this Agreement.

6.6. **Right to Receive Documentation of Electronic Funds Transfers**. Your electronic funds transfers will be reflected on the statements that will be delivered to you through the Platform Website and/or Mobile App, as described in Section 1.4. You can also contact Synapse, at +1(415) 688-2943 or email at help@synapsefi.com, to obtain information about any particular direct deposit or transfer.

6.7. **Right to Stop Payment of Preauthorized Transfers and Procedures.** If you have scheduled a one-time or a recurring ACH transfer via the Platform, you may stop or cancel that transfer by following the procedures defined here.

    6.7.1. To stop a preauthorized ACH transfer you initiated via the Platform Website or Mobile App, either one-time or recurring, use the Platform Website or Mobile App to cancel such payment. If you are unable to cancel or stop the payment via the Platform Website or Mobile App, please contact Synapse, at +1(415) 688-2943 or email at help@synapsefi.com, to request cancellation of the transfer.

    6.7.2. To stop a recurring transfer that you have authorized a third-party to debit, please contact that third-party to request the cancellation of the recurring payment. If the third-party is unable or unwilling to stop the transfer, please contact Synapse, at +1 (415) 688-2943 or email at help@synapsefi.com, to request a stop on the payment.

    6.7.3. If you wish to stop a recurring transfer, your request to stop the transfer must be received at least three (3) business days before the transfer is scheduled to occur. You should specify whether you wish to stop one recurring payment or all recurring payments. You must specify the name of the payee, the dollar amount of the payment and the date of the payment. We will be liable for your losses or damages if you requested the stop payment at least three (3) business days before the transfer was scheduled to occur and we did not stop the payment.

    6.7.4. In the case of an authorized third-party debit transfer, if the written stop payment notification is not received at least fourteen (14) days before the transfer was scheduled to occur, the payment in question will be honored as originally authorized and future payments will not be permanently stopped. In such cases, we will not be liable if we do not refuse payment.

6.8. **Your Liability for Unauthorized Transfers. You must contact Synapse, by calling at +1(415) 688-2943 or emailing** [help@synapsefi.com](mailto:help@synapsefi.com) if you believe your Account number was stolen or if you believe someone has transferred or may transfer money from your Account without permission. If your account number was stolen or if you believe someone has transferred or may transfer money from your Account without permission contact us immediately through Synapse, at the number specified above.

    6.8.1. If you notify us within two (2) business days after you learn of any unauthorized transaction, you can lose no more than $50.00 if someone used your Account without your permission. If you do not notify us within two (2) business days after you learn of the loss or theft of your Account number and we can prove that we could have stopped someone from using your Account without your permission if you had promptly notified us, you could lose as much as $500.00.

    6.8.2. If you become aware of and/or your statement shows transactions that you did not make, notify us at once following the procedures stated in the section below "Errors and Disputes." If you do not notify us within sixty (60) days after (i) you become aware of the transaction(s) and/or (ii) the statement was made available to you, you may not get back any of the value you lost after the sixty (60) days if we can prove that we could have stopped someone from taking value if you had notified us in time. If a good reason (such as a long trip or a hospital stay) kept you from telling us, we will extend the time periods. After receiving notice from you of such an event, we will close Account to keep losses down and issue you a new Account number.

    6.8.3. If your Account number changes, you must immediately notify your employer or any other payors or merchants. You must provide them with your new Account number to ensure that your direct deposit and/or payments activity continues uninterrupted.

6.8.4. If you furnish your access device and grant actual authority to make transfers to someone who then exceeds that authority, you will be liable for the transfers the person makes unless we have been notified that transfers by that person are no longer authorized. If you claim a credit or refund because of a forgery, alteration, or any other unauthorized withdrawal, you agree to cooperate with us in the investigation of the loss, including giving us an affidavit containing whatever reasonable information we require concerning your Account, the transaction, and the circumstances surrounding the loss. You will notify law enforcement authorities of any criminal act related to the claim of lost, missing, or stolen checks or unauthorized withdrawals. We will have a reasonable period of time to investigate the facts and circumstances surrounding any claim of loss. Unless we have acted in bad faith, we will not be liable for any special or consequential damages, including loss of profits or opportunity, or for attorneys' fees incurred by you. You agree that you will not waive any rights you have to recover your loss against anyone who is obligated to repay, insure, or otherwise reimburse you for your loss. You will pursue your rights or, at our option, assign them to us so that we may pursue them. Our liability will be reduced by the amount you recover or are entitled to recover from these other sources.  Concerning each item you deposit with us, or which we cash for you or give other consideration, you make the following warranties to us whether Bank is the payor bank or depository bank: all necessary signatures and endorsements have been placed on the time and are genuine, the item has not been materially altered and you have good title to it, and no defense of any party to the item is good against you. If any such warranty is breached, we may deduct the amount of the item from any of  your accounts or otherwise collect from you this amount plus expenses.

6.9. **Errors and Disputes**. If you think your statement is wrong or if you need more information about a transaction listed on it, please contact Synapse, at +1(415) 688-2943 or email at help@synapsefi.com. You must report any errors within sixty (60) days from the earlier of (i) the date the statement was made available to you on the Platform Website and/or the Mobile App or (ii) the date you access your Account and would have been able to see the  error. You must provide the appropriate information for us to investigate the error or unauthorized transaction, including at least the date of the transaction and its amount. If you call us, we may request that you send your complaint or question in writing within ten (10) business days.

6.9.1. We will determine whether an error occurred within ten (10) business days after we hear from you and will correct any error promptly. If we need more time, however, we may take up to forty-five (45) days to investigate your complaint or question. If we decide to use this additional time, we will credit your Account for the amount you think is in error within ten (10) business days, so that you will have use of the money during the time it takes to complete the investigation.

6.9.2. If your Account was opened less than thirty (30) days before the date of the suspected error, we may extend the ten (10) business day period to twenty (20) business days before crediting your Account.

6.9.3. If your Account was opened less than thirty (30) days before the date of the suspected error, the error resulted from a point-of-sale debit card transaction or was initiated in a foreign country, we may extend the ten (10) business day period to ninety (90) days before crediting your Account.

6.9.4. If we ask you to put your complaint or question in writing and you do not provide it within ten (10) business days, we will not credit your Account.

6.9.5. You will be informed of the result of the investigation within three (3) business days after our completion of the investigation. If we determine that there was no error, we will send you an explanation by email or by making it available via the Platform Website or the Mobile App. Copies of the investigation documentation can be obtained by calling us at +1(415) 688-2943 or emailing at help@synapsefi.com.

6.10. **Our Liability for Failure to Complete Transactions**. If we do not complete a transaction from your Account on time or in the correct amount, we will be liable for your losses or damages. However, we are not liable for any failed transaction if you do not have enough money in your balance to cover a transaction, if the ATM or device does not have enough cash or is not working properly, if circumstances beyond our control prevent the transaction, if the merchant requests authorization for an amount greater than the purchase amount, if access to your Account or linked account has been blocked after you reported your Account number or linked account number lost or stolen, if there is a hold or your funds are subject to legal or administrative process or other encumbrance restricting their use, if we have reason to believe the requested transaction is unauthorized, if we have received incomplete or inaccurate information from the third-party payor or payee or if there are other exceptions stated in this agreement or as provided by law. We are not liable for the failure to complete a transaction on a business account if we send you notice that the transaction was not completed.

7. **General Rules Governing the Account.**

7.1. **Assignment. Transfer. Non-Waiver. Applicable law.** The Account and your obligations under this Agreement may not be assigned. We may transfer our rights under this Agreement. Use of the Account is subject to applicable Federal laws and the laws of the State of Tennessee, and all applicable rules and customs of any clearinghouse or other association governing your Account or any transactions. If you or we excuse each other from complying with any part of this Agreement, this will not waive compliance by the excused party on any other occasion, notwithstanding the number of previous excusals or their duration. A party may not rely justifiably upon another's past forbearance to vary present or future rights, obligations or performance under this Agreement. If any provision of this Agreement is determined to be invalid, illegal or unenforceable for any reason, that provision shall not invalidate or render unenforceable any other provision of this Agreement.

**7.2.  Sub-Deposit Accounts; Bank Deposit Custoidal Program**

You agree to participate in the Bank Deposit Custodial Program (the "Program") and agree to be bound by the terms and conditions set forth herein.  If you have any questions about any provisions of this Agreement, please contact us at help@synapsefi.com.

**7.2.1.**  You agree to appoint Bank, as agent for you and as custodian, to open and maintain with one or more financial institutions (each, a "Program Bank" and collectively, "Program Banks") a deposit account, transaction account, or omnibus custody account (individually and collectively, "Sub-Deposit Account") in the name of Bank (for your benefit), and to deposit your funds into Sub-Deposit Accounts at one or more Program Banks as set forth on a list provided to you ("Bank List").

When you deposit funds with Bank under this Agreement, your funds will be deposited into your Account or will be deposited by Bank, as your agent and custodian, into Sub-Deposit Accounts at one or more Program Banks. As your custodian, Bank will maintain records of your Sub-Deposit Accounts at each Program Bank.

Your funds at Bank and at each Program Bank identified as a "Priority Bank" on the Bank List are eligible for FDIC insurance coverage up to $250,000 for each insurable capacity in which your Sub-Deposit Account is held (e.g., individual account, joint account, etc.) (the "Deposit Limit").

**Funds in your Account or Sub-Deposit Account may exceed the Deposit Limit in any Priority Bank.  Amounts in excess of the Deposit Limit but not greater than the Insurance Eligibility Limit (as defined herein) will be deposited at one or more Priority Banks.  Any amount in excess of the Insurance Eligibility Limit may not be covered by FDIC insurance; such amount may be deposited at a Priority Bank acting as an Excess Bank for such amount.**

**Any deposits (including certificates of deposit) that you maintain in the same insurable capacity directly with Bank, a Program Bank or through an intermediary (such as a broker), regardless of the number of accounts, will be aggregated with funds in your Account, Sub-Deposit Account or a Program Bank for purposes of the Deposit Limit. You are responsible for monitoring the total amount of deposits that you have with Bank and each Program Bank in order to determine the extent of FDIC insurance coverage available to you.**

The Deposit Accounts are solely the obligations of the Program Banks, and neither directly nor indirectly obligations of Bank or Service Provider. The owner of the Sub-Deposit Account is Bank as agent and custodian for you and ownership will be evidenced by a book entry in records maintained by us. You will not have a direct relationship with the Program Banks. No evidence of ownership related to the Sub-Deposit Account will be issued to you, and you will not receive any written confirmation of the establishment of the Sub-Deposit Account or transfer of funds to or from the Sub-Deposit Account. All deposits and withdrawals will be made by Bank on your behalf, and all deposits to your Sub-Deposit Account and withdrawals from the Sub-Deposit Account necessary to satisfy any debits to or withdrawals from your Account will be made by Bank, as your agent. Information about your Sub-Deposit Accounts may be obtained from Service Provider or Bank, not the Program Banks.

All communications regarding the Program, including periodic statements and notices regarding changes to the Program, are the responsibility of Service Provider and Bank, not the Program Banks. If you have any questions regarding your Account or Sub-Deposit Accounts, please contact Service Provider at help@synapsefi.com.

The terms and conditions of the Program, and any feature of the Program, may be varied at Bank's sole discretion. Bank, in its sole discretion, may make exceptions to the terms and conditions of the Program.

**7.2.2.**  Appointment of Bank as Your Agent and Custodian.  You appoint Bank, and Bank agrees to be appointed, as your agent and custodian to hold in safekeeping all Sub-Deposit Accounts at Program Banks. You authorize Bank to execute and deliver or file on your behalf all appropriate receipts, agreements, releases and other instruments, including whatever agreements may be required to establish and maintain the Sub-Deposit Accounts or to establish your ownership interest in the Sub-Deposit Account. You appoint Bank to act as your agent with respect to establishing, maintaining and administering the Sub-Deposit Account, and you authorize us to take any action necessary to establish, maintain and administer the Sub-Deposit Account and to initiate transfers to and from your Sub-Deposit Account and Account as we may determine in Bank's sole discretion.

You agree that Bank, as your agent, may place any or all of your funds on deposit with Bank at one or more Program Banks in an amount determined in Bank's sole discretion based on available capacity at the Program Bank or other criteria, including rates or fees paid on deposits by the Program Bank to Bank. Bank may place your funds without regard to whether such funds may exceed the Deposit Limit at one or more Program Banks, even if your funds could be placed in one or more Program Banks in an amount less than the Deposit Limit.

Bank may financially benefit if it places your funds into a Program Bank in excess of the Deposit Limit when that Program Bank pays a greater amount of fees to Bank than other Program Banks that could accept your deposits in amounts under the FDIC insurance limit. Please carefully read the section entitled "Waiver of Conflicts" below.

You authorize Bank to collect and retain all interest and other payments of income pertaining to the Sub-Deposit Accounts (if any) and to deliver or transfer the funds on deposit in the Sub-Deposit Accounts to another account with Bank, including the Account, to process any transactions or transfers from your Account. As your agent, you authorize Bank to determine the amount of funds to deposit in and withdraw from each Sub-Deposit Account.

You agree that Bank, in its sole discretion, may divide the funds deposited into the Account into one or more separate Sub-Deposit Account to be managed by Bank.

You agree that Bank may comply with any writ of attachment, execution, garnishment, tax levy, restraining order, subpoena, warrant or other legal process that Bank believes (correctly or otherwise) to be valid. Bank may notify you of such process by telephone, electronically or in writing. If Bank is not fully reimbursed for its record research, photocopying and handling costs by the party that served the process, Bank may charge such costs to your Sub-Deposit Account, in addition to any minimum fee Bank

may charge for complying with legal processes.

You agree that Bank may honor any legal process that is served personally, by mail, or by facsimile transmission at any of Bank's offices or an office of Bank's agent (including locations other than where the funds, records or property sought is held), even if the law requires personal delivery at the office where your Deposit Account or records are maintained.

We may provide your name, tax identification number and other pertinent identifying information to Program Banks, and other parties providing services in connection with the placement of your funds and the establishing and holding the Sub-Deposit Account.

You agree that Bank shall have no liability to you for any action taken or omitted by Bank hereunder in good faith.

You agree to indemnify Bank and its nominees against, and to hold Bank and its nominees harmless from, all expenses (including counsel fees), liabilities and claims arising out of the holding, delivery or transfer of the Sub-Deposit Accounts and compliance with any legal process that Bank believes (correctly or otherwise) to be valid.

7.2.3.    Operation of the Program.

7.2.3.1.    Accounts at Bank. You agree to establish an Account at the Bank and that we may establish a Sub-Deposit Account on your behalf at Bank.  Please read the section titled "Your Relationship with Bank and the Program Banks" below.

7.2.3.2.    Accounts at Program Banks. Bank, as your agent, will open one or more Sub-Deposit Accounts on your behalf at the Program Banks on the then-current Bank List and act as your custodian for the Sub-Deposit Accounts. At some Program Banks, Bank may open a money market deposit account ("MMDA") and a transaction account ("TA"); at other Program Banks, Bank may open a TA only.  Each MMDA and TA is considered a Sub-Deposit Account. The Sub-Deposit Account may not be transferred to another institution, except by us or the Program Bank.

7.2.3.3.    Program Bank List. The Bank List of available Program Banks into which your funds may be deposited is available on our website at: https://www.getevolved.com/fdic-program-bank-list/or by contacting us.  The Bank List may include one or more Program Banks that constitute Excess Banks; Bank may deposit your funds at an Excess Bank without limit and without regard to Deposit Limit if funds sufficient to meet the Insurance Eligibility Limit have been placed at one or more Priority Banks. If all of your funds are withdrawn from a Program Bank, the next time your funds are available for deposit in a Program Bank, your funds may be deposited in a different Program Bank.

You may at any time with reasonable advance notice to us at help@synapsefi.com, designate a Program Bank as ineligible to receive your funds. In addition, you may at any time instruct Bank to remove your funds from a Program Bank, close your Sub-Deposit Accounts with the Program Bank and designate the Program Bank as ineligible to receive future deposits. Any funds from a closed Sub-Deposit Account will be deposited into Sub-Deposit Accounts at another Program Bank set forth on the Bank List, as amended by you, or if no other Program Bank is eligible, the funds will be deposited into the Account. For example, if you maintain other accounts at a Program Bank on the list separate from the Program, you may wish to designate this Program Bank as ineligible to avoid the aggregation of funds in your account(s) held directly with funds deposited through the Program as the combination of funds may exceed the amount of available FDIC insurance coverage at that Program Bank.  If you designate all Program Banks as ineligible, we will return funds to your Account and may, in our discretion and in accordance with law, close your Account and any Sub-Deposit Account opened specifically for you.

7.2.3.4.    FDIC Deposit Insurance. Bank will place your funds at Priority Banks as your agent in a manner that enables up to $250,000 of your deposits or such other greater amount as may be disclosed to you by Bank from time to time to be eligible for FDIC insurance (such amount, the "Insurance Eligibility Limit"). From time to time, Bank may increase the amount of available FDIC insurance through the Program, and you will be notified by of such an increase. Any other deposits you have at the Priority Banks outside of the Program may reduce FDIC insurance coverage of your deposits through the Program. Moreover, if you have designated one or more Priority Banks as ineligible to receive your funds, the amount of FDIC insurance for which your funds are eligible may be limited. The depositing of your funds into the Sub-Deposit Account may not increase your FDIC deposit insurance coverage and may in fact reduce insurance coverage depending on any other deposits you may maintain at a Program Bank.

7.2.3.5.    Changes to Bank List. One or more of the Program Banks included on the Bank List may be replaced with a Program Bank not previously included on the Bank List or a Program Bank may be deleted from the Bank List. In addition, Program Banks designated as Priority Banks may be replaced with a Program Bank not previously designated as a Priority Bank or a Program Bank may be removed from the list of designated Priority Banks.  We will notify you if the Bank List has changed in accordance with the section titled "Changes to the Program." Continued use of your Deposit Account and/or the Program after receipt of the initial Bank List or notice of subsequent changes to such list will constitute your consent to such list.

An increase in the number of Priority Banks in the future may not increase the potential FDIC coverage available in the Program. A decrease in the number of Priority Banks in the future could decrease the potential FDIC coverage available in the Program.  A decrease in the number of Priority Banks in the future could decrease the potential FDIC coverage available in the Program.

You agree that deposits and withdrawals of your funds made after a change to the Bank List will occur as described below under "Deposit Procedures" and "Withdrawal Procedures," respectively.

If a Program Bank at which you have funds in a Sub-Deposit Account(s) no longer makes the Sub-Deposit Account(s) available through the Program, we may move funds to another Program Bank on the Bank List on or about the day that the Program Bank leaves the Program or return funds to the Account.

7.2.3.6.    Deposit Procedures. You agree that Bank, as your agent, may open one or more Sub-Deposit Accounts on your

behalf at one or more of the Program Banks on the then current Bank List. If Bank has opened both an MMDA and a TA at a Program Bank, all deposits will be made into your MMDA and/or TA, subject to six (6) monthly withdrawal limits applicable to MMDA. You agree that Bank, as your agent, may place your funds at one or more Program Banks without limit and without regard to the Deposit Limit. You agree that Bank will place your funds based on each Program Bank's available capacity or other criteria, including rates paid by Program Banks on Deposit Accounts or fees paid to Bank. **Please see the section titled "Waiver of Conflicts" for additional information. You understand and agree that deposit amounts in excess of the Deposit Limit at a Priority Bank and deposit amounts at an Excess Bank will not be insured by the FDIC.**

Periodically, your previously deposited funds may be reallocated among the Program Banks on a revised Bank List based on each Program Bank's available capacity or other criteria, including rates paid by Program Banks to Bank.

**You understand and agree that it is your obligation to monitor your funds deposited at all Program Banks. You may email Synapse at any time at help@synapsefi.com to determine your Sub-Deposit Account balances at each Program Bank.**

7.2.3.7.    Withdrawal Procedures. You agree that all withdrawals will be made by Bank as your agent. Funds may be withdrawn from Program Banks based on a Program Bank's available capacity or other criteria, including, but not limited to, rates or fees paid to Bank. Funds may also be withdrawn from Sub-Deposit Account to fund transactions associated with your Account.

If you have an MMDA and a TA at a given Program Bank, all withdrawals will be made from the TA. If funds in the TA at a Program Bank from which funds are being withdrawn are insufficient, funds in the related MMDA at that Program Bank will be transferred to the TA, plus funds to maintain any TA minimum, or "threshold," amount.

At any point during a month in which transfers from an MMDA at a Program Bank have reached a total of six (6), all funds will be transferred from that MMDA to the linked TA at the Program Bank until the end of the month. Deposits for the remainder of the month into this Program Bank will be made to the TA. At the beginning of the next month, funds on deposit in the TA will be transferred to the MMDA, minus any threshold amount to be maintained in the TA. The limits on MMDA transfers will not limit the number of withdrawals you can make from funds on deposit at a Program Bank or the amount of FDIC insurance coverage for which you are eligible.

Pursuant to federal banking regulations, the Program Banks may reserve the right to require seven days' prior written notice before you withdraw or transfer funds from an MMDA. The Program Banks have indicated that they have no present plans to exercise this right. TAs are not subject to this restriction.

7.2.3.8.    Interest Rates Paid on Deposit Balances. Your Account is an interest bearing account, and you will accrue interest on the total of your balances in the Account and Sub-Deposit Accounts at the rate, and in accordance with the terms of this Agreement and the Section titled "Interest Information." No Program Bank pays interest to you on the balances in the Sub-Deposit Accounts. For the avoidance of doubt, Bank will pay interest to your Account based on the Account and Sub-Deposit Account balance you maintain, all in accordance with the terms of this Agreement and the Section titled "Interest Information." The existence of the Sub-Deposit Account will not change the manner in which you use, obtain information about or earn interest on your Account, except that Bank will consider your balances in the Sub-Deposit Account for purposes of calculating your Account balance and Account interest payments.  The amount of fees or compensation received by Bank from a Program Bank does not affect the interest rate you receive on your Account, which will uniformly accrue across your Account and Sub-Deposit Account solely in accordance with this Agreement.

7.2.3.9.    Waiver of Conflicts. You understand and agree that Bank, as your agent, may place any or all of your funds on deposit with Bank at one or more Program Banks in an amount determined in Bank's sole discretion based on available capacity at the Program Bank or other criteria, including rates paid on deposits by the Program Bank or fees paid to Bank.

You understand and agree that Bank has no obligation to place funds into Program Banks to maximize the amount of deposit insurance available on your funds or to maximize the interest rates that your funds may earn. Bank may place your funds without regard to whether such funds may exceed the Deposit Limit at one or more Program Banks, even if your funds could be placed in one or more Program Banks in an amount less than the Deposit Limit.

You understand and agree that the Program Banks may pay fees to Bank and that Bank has no obligation to share these fees with you. You understand and agree that Bank may financially benefit if it places your funds into a Program Bank in excess of the Deposit Limit when that Program Bank pays a greater amount of fees to Bank than other Program Banks that could increase the deposit insurance available to you. You further acknowledge and agree that each Program Bank may pay Bank a fee in connection with the placement of funds with the Program Bank, including for each Sub-Deposit Account. The fee may vary between banks. Even if Bank receives a fee from a Program Bank, the interest rate paid to you will not be affected. For the avoidance of doubt, you authorize Bank to collect and retain all interest and other payments of income or principal pertaining to the placement of your deposits at other Program Banks, including the Sub-Deposit Accounts. You further acknowledge that we and Program Banks may also receive other financial benefits in connection with the funds in your Sub-Deposit Account.

Bank's placement of funds in the Deposit Account may reflect considerations of federal and state law, Bank's funding needs and funding needs of Program Banks, general economic conditions or other factors determined by Bank in its sole discretion. Bank may place funds to enhance its business objectives and for balance sheet management purposes without any benefit to you.  Subject to applicable law, your only rights with respect to the

Sub-Deposit Account are to demand Bank repay you all amounts in your Account that were deposited with Bank and those transferred to the Sub-Deposit Account from your Account.

**7.2.3.10.** Information About Your Accounts. Although there are two or more accounts associated with your funds (the Account and the Sub-Deposit Account), your Account is treated as a single account for our reporting deposits and withdrawals, accruing interest in accordance with the terms of this Agreement and the Section titled "Interest Information," as well as for balance requirement, service charge, and monthly statement (which will reflect the total balance in your Account and each Sub-Deposit Account, excluding any payments or amounts owed or belonging to us or any Program Bank). The funds you deposit with us in your Account (whether or not transferred to a Sub-Deposit Account) will be made available to you in accordance with this Agreement (and regardless of the performance of any of our loans or investments, subject to FDIC insurance limitations). The existence of the Sub-Deposit Account will not change the manner in which you use, obtain information about your Account, or obtain interest on your Account. Transfers to and from the Sub-Deposit Account will not appear on your monthly statement. We are responsible for the accuracy of your Account statements, not the Program Banks. You will receive periodic information which will reflect the opening and closing balances of your Sub-Deposit Accounts at each Program Bank for the applicable period.

**7.2.4.** Your Relationship With Bank And The Program Banks.  Bank will act as your agent and custodian in establishing the Sub-Deposit Accounts at each Program Bank, depositing funds into the Sub-Deposit Accounts, withdrawing funds from the Sub-Deposit Accounts and transferring funds among the Sub-Deposit Accounts.

Sub-Deposit Account ownership will be evidenced by a book entry on the account records of each Program Bank (or Bank on behalf of Program Bank) and by records maintained by Bank as your custodian. No evidence of ownership, such as a passbook or certificate will be issued to you. You may at any time obtain information about your Sub-Deposit Accounts by contacting Synapse.

You agree that all transactions with respect to your Sub-Deposit Accounts must be directed by Bank and all information concerning your Sub-Deposit Accounts must be obtained from Bank through Synapse. You agree that the Program Banks have no obligation to accept instructions from you with respect to your Sub-Deposit Accounts or to provide you with information concerning your Sub-Deposit Accounts.

If you decide to terminate your participation in the Program, your termination will result in a return of funds in accordance with law and closing of your Account and any Sub-Deposit Account opened specifically for you.

Each Sub-Deposit Account constitutes an obligation of a Program Bank and is not directly or indirectly an obligation of Bank. You can obtain publicly available financial information concerning each Program Bank at www.ffiec.gov/nicpubweb/nicweb/nichome.aspx, by contacting the FDIC Public Information Center by mail at L. William Seidman Center, Virginia Square, 3501 North Fairfax Drive, Arlington, Virginia 22226, or by phone at 703-562-2200. Bank does not guaranty in any way the financial condition of any Program Bank or the accuracy of any publicly available financial information concerning any Program Bank.

**7.2.5.** Fees. You understand and agree that each Program Bank will pay Bank a fee in connection with the Program. The fee may vary between banks. Even if Bank receives a fee from a Program Bank, the interest paid to you on your deposits in the Account or Sub-Deposit Account does not change.  You will be not charged fees or commissions in connection with your participation in the Program. In addition, other service providers may receive fees from each Program Bank or Bank and may receive a portion of the fee paid to Bank by the Program Banks.

**7.2.6.** Changes to the Program. You agree that Bank may modify the terms and conditions of the Program, including changing, removing or adding Program Banks offered therein. All notices of material changes to the Program may be communicated by a posting on our website, letter, a separate electronic or written communication, a note on a periodic statement or other means.

**7.2.7.** FDIC; Deposit Insurance. Your Sub-Deposit Accounts (including principal and accrued interest) are insured by the FDIC, an independent agency of the U.S. Government, up to $250,000 for all deposits held in the same insurable capacity as recognized by the FDIC at any one bank. According to the FDIC, no depositor has ever lost a penny of FDIC-insured funds.

Your funds become eligible for FDIC insurance immediately upon placement into your Sub-Deposit Account at a Priority Bank. Generally, any accounts or deposits that you maintain directly with a particular bank, or through any other intermediary, in the same insurable capacity in which the accounts or deposits are maintained would be aggregated with the accounts or deposits for purposes of the $250,000 Deposit Limit.

You are responsible for monitoring the total amount of deposits that you hold with any one bank, directly or through an intermediary, in order to determine the extent of FDIC insurance coverage available to you on your deposits. Bank is not responsible for any insured or uninsured portion of any deposits.

In the event a Priority Bank fails, your Deposit Account at that Priority Bank is insured, up to $250,000, for principal and interest accrued to the day the Priority Bank is closed.

Under certain circumstances, if you become the owner of deposits at a Program Bank because another depositor dies, beginning six months after the death of the depositor the FDIC will aggregate those deposits for purposes of the $250,000 Deposit Limit with any other deposits that you own in the same insurable capacity at the bank. Examples of deposit accounts that may be subject to this FDIC policy include joint accounts, "payable on death" accounts and certain trust accounts.  The FDIC provides the six-month "grace period" to permit you to restructure your deposits to obtain the maximum amount of deposit insurance for which you are eligible.

In the event that FDIC deposit insurance payments become necessary, payments of principal plus unpaid and accrued interest will be made to Bank as your custodian. There is no specific time period during which the FDIC must make insurance payments

available. Bank will not be obligated to you for amounts not covered by deposit insurance nor will Bank be obligated to make any payments to you in satisfaction of a loss you might incur as a result of a delay in insurance payouts. Bank will not be obligated to credit your account with funds in advance of payments received from the FDIC.

Furthermore, you may be required to provide certain documentation to the FDIC before insurance payments are made. For example, if you hold deposits as trustee for the benefit of trust participants, you may be required to furnish affidavits and provide indemnities regarding an insurance payment.

If your balance in your Sub-Deposit Accounts are assumed by another depository institution pursuant to a merger or consolidation, such deposits will continue to be insured separately, up to the FDIC insurance coverage limits and subject to the terms hereunder, from the deposits that you might have established with the acquiring institution until (i) the maturity date of any time deposits (including certificates of deposit) that were assumed, or (ii) with respect to deposits that are not time deposits, the expiration of a six month period from the date of acquisition. Thereafter, any assumed deposits will be aggregated with your existing deposits with the acquiring institution held in the same capacity for purposes of FDIC insurance coverage. Any deposit opened at the acquiring institution after the acquisition will be aggregated with deposits established with the acquiring institution for purposes of FDIC insurance coverage.

If you have questions about basic FDIC insurance coverage, please contact us. You may wish to seek advice from your own attorney concerning FDIC insurance coverage of deposits held in more than one insurable capacity. You may also obtain information by contacting the FDIC, Deposit Insurance Outreach, Division of Depositor and Consumer Protection, by letter (550 17th Street, N.W., Washington, D.C. 20429), by phone (877-275-3342 or 800-925-4618 (TDD)), by visiting the FDIC website at: https://www.fdic.gov/deposit/index.html, or by email using the FDIC's Online Customer Assistance Form available on its website.

**7.2.8.**   Termination. Your participation in the Program may be terminated without penalty at any time at the option of either you or Bank. You may also opt-out of the Program at any time. Following opt-out or termination of your participation in the Program, Bank may, if applicable, transfer your funds in the Sub-Deposit Accounts at Program Banks to your Account or, at its sole discretion, terminate your Account and return your funds in accordance with applicable laws and regulations.

.

7.3. **Legal Processes Affecting Accounts**. If we are served with a subpoena, government agency request for information, restraining order, writ of attachment or execution, levy, garnishment, search warrant, forfeiture or similar order or legal process relating to your Account (termed "legal action" in this section), regardless of the jurisdiction of the issuing authority, we may rely on the representations made in the legal action and comply with the legal action, regardless of the jurisdiction of the issuing authority or the location of the Bank at which the legal action is received. In these cases, we will not have any liability to you if there are insufficient funds to pay your items because we have withdrawn funds from your Account or in any way restricted access to your funds in accordance with the legal action. If you believe your funds are exempt from legal action, or otherwise should not be subject to legal action (for example, if you own funds and the legal action applies to another joint owner, you believe the court, garnishor, or levying authority lacks jurisdiction over you or the property, or you believe the garnishment or levy names the wrong party as garnishee), you agree that it is your responsibility to raise any defense to the legal action against the party who originated the legal action, and you agree that we have no obligation to do so. Any fees or expenses we incur in responding to any legal action (including, without limitation, attorneys' fees and our internal expenses) may be charged against your Account. Unless expressly prohibited by law, we will charge your account a fee for each legal action received, regardless of whether the action is subsequently revoked, vacated or released.

7.4. **Abandoned or Inactive Accounts**. Tennessee has unclaimed property laws that govern when accounts are considered abandoned. Your account is usually considered abandoned if you have not made a deposit or withdrawal, or signed in to your online Account, for a specified period of time. We are required by the unclaimed property laws to turn over accounts considered abandoned to the applicable state. Before we turn over an abandoned account, we may send a notice to you by e-mail or the address we show for the account statement. Unless prohibited by law, we may charge to your Account our costs and expenses of any notice, payment and turnover of the remaining balance of your Account to the applicable state. Tennessee laws will apply on unclaimed or abandoned property related to this Account.

7.5. **FDIC Insurance**. The Federal Deposit Insurance Corporation ("FDIC") insures deposits according to the ownership category in which the funds are insured. Not all accounts may be insured. Unless otherwise stated by us or the FDIC, the Account is insured by the FDIC up to the standard maximum deposit insurance amount per depositor, per FDIC-insured bank, and per ownership category (the "Standard Insurance Amount" or "SIA"), and, with respect to Sub-Deposit Accounts, please see Section 7.2. For purposes of determining the SIA applicable to your Account at Bank, you need to consider all accounts that you also hold at the Bank. To determine SIA applicable to your Account maintained at Bank and for any other FDIC insurance requirements that may apply, please visit the FDIC's website at www.fdic.gov/deposit/deposits or call the FDIC directly at 1-877-ASKFDIC (1-877-275-3342). You can also use the FDIC's Electronic Deposit Insurance Estimator (EDIE) at www.fdic.gov/edie. For insurance coverage on Sub-Deposit Account(s), please refer to Section 7.2 above.

7.6. **Standard of Care. Limitation of Liability**. Our liability for losses you incur in connection with your Account is limited to actual damages proved that are proximately caused by our failure to exercise ordinary care. Nevertheless, if we make an error in your favor by excessively crediting or insufficiently debiting your account for any reason, including, without limitation, to the giving of cash or credit in excess of a corresponding account debit, you agree that you immediately owe us the amount in error, whether you relied on the error or not. You agree to waive your rights to a jury and to punitive and exemplary damages and further agree to be subject to all parts of the arbitration provision in Section 6.10. Damages for any breach of this Agreement are limited to those that are direct and lie in contract, and will exclude indirect and consequential damages. Also excluded are damages in tort, including but not limited to those for emotional distress, unless caused by a willful and malicious act, which in the case of the unauthorized disclosure of private or confidential information must also be defamatory. In return, we also waive our same rights in any such action, cross-action or claims in arbitration we may file against you. We will have no liability for acting on instructions from you accepted or interpreted by us in good faith according to the terms of this Agreement, declining to act on instructions whose authenticity or accuracy cannot be verified to our satisfaction, or not acting on instructions not actually received.

    7.6.1. Except as required by applicable law, we will have no liability to you if we are unable to complete a transaction for any reason beyond our control. Except as otherwise expressly provided in this Agreement or as otherwise required by applicable law, we, any affiliates, and the parties with whom we and our affiliates contract in order to offer your Account

and related services are neither responsible nor liable for any indirect, incidental, consequential, special, exemplary, or punitive damages arising out of or relating in any way to your Account, any products or services purchased using the Account, or this Agreement (as well as any related or prior agreement you may have had with us).

7.6.2.  By accepting this Agreement, you acknowledge that Bank will not be liable for taking action for the purpose of compliance with any applicable law or regulation.

7.7.  **Indemnification**. You shall indemnify and defend us and our officers, directors, employees, agents, and representatives, and hold each of them harmless, against suit, judgment,  asserted claim, demand, excise taxes, claims, liabilities or losses, including fees of counsel, interest and other expenses, arising directly or indirectly from your breach of your obligations under this Agreement or those arising from the instructions or actions of you or of third  parties whom you have permitted to direct, manage, view or otherwise act or omit to act in connection with your Account. If we and our officers, directors, employees, agents or representatives are entitled to indemnification against a claim under this Agreement,  we shall give you prompt notice of the claim and any further pleadings, communication or other information connected with it. You shall defend us, and our officers, directors, employees, agents, and representatives, or pay for the cost of its defense, as we or our officers, directors, employees, agents or representatives shall elect. The parties shall cooperate for  the cost-effective defense of the claim, and us and our officers, directors, employees, agents and representatives shall not settle any claim for which indemnification is demanded without your consent.

7.8.  **No Warranty of Availability or Uninterrupted Use.** From time to time, services related to the Platform Website, the Mobile App or the Account may be inoperative. When this happens, you may be unable to access the Platform, and you may be unable to use the Account or obtain information about the Account. Please notify us if you have any problems using the Account or Platform Website and/or Mobile App. You agree that we will not be responsible for temporary interruptions in service due to maintenance, website changes, or failures, nor shall we be liable for extended interruptions due to failures beyond our control, including but not limited to the failure of interconnecting and operating systems, computer viruses, forces of nature, labor disputes and armed conflicts.

7.9.  **Amendment and Cancellation**. Except as otherwise required by applicable law, we may amend or change the terms and conditions of this Agreement at any time by posting the amended Agreement on the Platform Website, and any such amendment will be effective  upon such posting to the website. You will be notified of any amendment(s) in the manner provided by applicable law prior to the effective date of the amendment(s). However, if the amendment(s) is made for security purposes or your benefit, we may implement it without prior notice.

7.9.1.  We may cancel or suspend your Account or this Agreement at any time. You may cancel this Agreement by emailing help@synapsefi.com to close your Account. Your cancellation of this Agreement will not affect any of our rights or your obligations arising under this Agreement prior to cancellation.

7.9.2.  If your Account is canceled, closed or terminated for any reason, you may request the balance to be returned to an external account that you have maintained, including any linked external account. Allow at least fourteen (14) days for processing of such  balance return. If Platform's offering is canceled, closed, or terminated, Platform will be responsible for sending you prior notice, in accordance with applicable law. Specific information and instructions, including how to convert and receive any remaining Account balance, will be included in the notice.

7.10.  **Customer Service.** For customer service or additional information regarding your Account and any financial services, please contact Synapse at:

7.10.1.  **Phone:** +1(415) 688-2943

7.10.2.  **Email: help@synapsefi.com**

7.10.3.  **Hours**. Customer Service agents are available to answer your calls:

7.10.3.1.  Eastern Time: Monday through Friday: 10:00 AM – 5:00 PM.

7.10.3.2.  Central Time: Monday through Friday: 10:00 AM – 5:00 PM.

7.10.3.3.   Pacific Time: Monday through Friday: 10:00 AM – 5:00 PM.

7.11.   **Arbitration. PLEASE READ THE FOLLOWING ARBITRATION PROVISION CAREFULLY. IT PROVIDES FOR MANDATORY ARBITRATION OF CONSUMER CLAIMS (SUBJECT TO SOME EXCEPTIONS), INSTEAD OF COURT PROCEEDINGS. IF YOU OR WE ELECT ARBITRATION OF A CLAIM, NEITHER WILL HAVE THE RIGHT TO PURSUE THAT CLAIM BEFORE A JUDGE OR JURY IN COURT OR TO PARTICIPATE IN A CLASS ACTION PROCEEDING. RIGHTS YOU WOULD HAVE IN COURT THAT MAY BE LIMITED OR UNAVAILABLE IN ARBITRATION INCLUDE THE RIGHT TO CONDUCT DISCOVERY OR TO APPEAL. FEES AND EXPENSES OF ARBITRATION MAY BE HIGHER THAN THOSE ASSOCIATED WITH COURT PROCEEDINGS. THE ARBITRATOR'S DECISION WILL BE BINDING, EXCEPT AS PROVIDED BELOW.**

7.11.1.   **Agreement to Arbitrate**. Any claim, dispute, or controversy ("Claim") arising out of or relating in any way to: i) this Agreement; ii) the Account or Services; iii) your use of the Account or Services; iv) the amount of funds Account; v) advertisements, promotions or oral or written statements related to the Account or Services; vi) the benefits and services related to the Account or Services; or vii) transactions made using Account or Services, no matter how described, pleaded or styled, shall be FINALLY and EXCLUSIVELY resolved by binding individual arbitration conducted by the American Arbitration Association ("AAA") under its Consumer Arbitration Rules. This arbitration agreement is made pursuant to a transaction involving interstate commerce and shall be governed by the Federal Arbitration Act (9 U.S.C. 1-16). The arbitration shall occur in Shelby County, Tennessee.

7.11.2.   ARBITRATION OF YOUR CLAIM IS MANDATORY AND BINDING. NEITHER PARTY WILL HAVE THE RIGHT TO LITIGATE THAT CLAIM THROUGH A COURT. IN ARBITRATION, NEITHER PARTY WILL HAVE THE RIGHT TO A JURY TRIAL OR TO ENGAGE IN DISCOVERY, EXCEPT AS PROVIDED FOR IN THE AAA CODE OF PROCEDURE

7.11.3.   For a copy of the procedures, to file a Claim or for other information about this organization, contact it at: AAA, 335 Madison Avenue, New York, NY 10017, or at www.adr.org.

7.11.4.   All determinations as to the scope, interpretation, enforceability and validity of this Agreement shall be made final exclusively by the arbitrator, which award shall be binding and final. Judgment on the arbitration award may be entered in any court having jurisdiction.

7.11.5.   NO CLASS ACTION, OR OTHER REPRESENTATIVE ACTION OR PRIVATE ATTORNEY GENERAL ACTION OR JOINDER OR CONSOLIDATION OF ANY CLAIM WITH A CLAIM OF ANOTHER PERSON OR CLASS OF CLAIMANTS SHALL BE ALLOWABLE.

7.11.6.   This arbitration provision shall survive: i) the termination of the Agreement; ii) the bankruptcy of any party; iii) any transfer, sale or assignment of your Account, or any amounts owed on your Account, to any other person or entity; or iv) closing of the Account. If any portion of this arbitration provision is deemed invalid or unenforceable, the remaining portions shall remain in force.

7.11.7.   **IF YOU DO NOT AGREE TO THE TERMS OF THIS ARBITRATION AGREEMENT, EMAIL US AT HELP@SYNAPSEFI.COM TO CLOSE THE ACCOUNT AND REQUEST A REFUND, IF APPLICABLE.**

7.11.8.   **Costs of Arbitration**. You and we will be responsible for paying the fees of the arbitrator and any administrative fees charged by the Administrator according to the rules and procedures of the Administrator. We will also pay or reimburse you for all or part of other arbitration fees, if the arbitrator determines there is good reason to do so, and we will pay any fees and costs, which we are required to pay by law or by the rules and procedures of the Administrator. In addition, in the event that you receive an arbitration award that is greater than our last written settlement offer, the arbitrator shall have the discretion to require us to pay your attorneys' fees and costs. Otherwise, each party will bear its own attorneys' fees and costs, regardless of who prevails.

7.11.9. The arbitrator's decision is final and binding on the parties, except for any right of appeal provided by the Federal Arbitration Act. Costs will be allocated in the same way as costs are allocated in arbitration by a single arbitrator. A final and binding award is subject to judicial review only as provided by the Federal Arbitration Act. An arbitration award will be enforceable under the Federal Arbitration Act by any court having jurisdiction.

7.12.   **Governing Law.** This Agreement shall be governed by the laws of the State of Tennessee.

7.13.   **Termination.** We and you may each terminate this relationship unilaterally at any time upon notice. To close your Account and terminate this Agreement, please contact us through Synapse as provided in Section 7.9.

7.13.1. You understand and acknowledge that even after executing this Agreement and opening an Account, Bank has the right to close your account and terminate this relationship, and you will have no right to compel Bank to grant access to Bank services, either initially or after an Account is opened.

7.13.2. IMPORTANT: If you terminate your relationship with Platform, the Account will automatically be closed. Upon closure, any remaining funds in the Account will be converted and returned to you in accordance with this Section.

7.13.3. IMPORTANT: If the agreement between Synapse and Platform is terminated, this Account may be terminated. In this case, Synapse shall send you a notice with the applicable procedures.

7.13.4. Unless you are notified otherwise, upon termination, Synapse will instruct Bank to return any remaining funds in the Account in a check mailed to the address on file associated with the Account. Bank's obligations to you will be fully satisfied by mailing a check in the appropriate amount to the address specified by Synapse.