**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF NEW YORK**

| | |
|---|---|
| ERIKA BAUMGARTNER, DANIEL LOPEZ and SHAUN KRAMM, on behalf of themselves and all others similarly situated,<br><br>                Plaintiffs,<br><br>v.<br><br>YOTTA TECHNOLOGIES INC., EVOLVE BANK & TRUST,<br><br>                Defendants. | Case No. 1:24-cv-05535-AKH |

**MEMORANDUM OF LAW IN SUPPORT OF DEFENDANT EVOLVE BANK &**
**TRUST'S MOTION TO DISMISS THE COMPLAINT**

# TABLE OF CONTENTS

**Page**

TABLE OF AUTHORITIES ................................................................................................. iii

I.      PRELIMINARY STATEMENT ................................................................. 1

II.     ALLEGATIONS IN THE COMPLAINT AND FACTUAL BACKGROUND ............... 4

     A.      Plaintiffs Sign Up For Banking Services Through Yotta. ................................... 4

     B.      All Yotta Customers Agree To A Consumer Interest Checking Account Agreement With Evolve. ................................................................. 5

     C.      Synapse Fails To Reconcile Its Account Ledgers, Forcing Evolve To Freeze Accounts. ................................................................................ 6

III.     LEGAL STANDARD ........................................................................................... 9

IV.     ARGUMENT ...................................................................................................... 9

     A.      The Court Can Consider The Deposit Agreement At The Pleading Stage. ......... 11

     B.      Tennessee Law Applies. .............................................................................. 13

     C.      Plaintiffs' Negligence Claim (Count I) Fails Because Evolve Owes No Duty Apart From Those Explicitly Imposed By The Deposit Agreement. ......... 13

     D.      Plaintiffs' Unjust Enrichment Claim (Count II) Fails Because The Parties' Relationship Is Governed By A Valid, Enforceable Agreement. ....................... 15

     E.      Plaintiffs' Conversion Claim (Count IV) Fails Because Plaintiffs' Claims Sound In Contract, Not Tort, And Because Evolve Has Not Converted The Account Funds. ............................................................................................ 16

         1.      Plaintiffs' claim sounds in contract, not tort. ........................................... 16

         2.      Plaintiffs fail to allege that Evolve appropriated the account funds for Evolve's own use and benefit. .......................................................... 17

     F.      Plaintiffs' Breach-of-Fiduciary-Duty Claim (Count V) Fails Because Banks Do Not Owe A Fiduciary Duty To Depositors. ........................................ 18

     G.      Plaintiffs' Breach-of-Contract Claim (Count III) Fails Because The Account Freeze Is Permitted By The Deposit Agreement. .................................. 19

V.      CONCLUSION ................................................................................................. 22

DECLARATION OF HARRY ALAN WORD, JR., IN SUPPORT OF DEFENDANT EVOLVE BANK & TRUST'S MOTION TO DISMISS THE COMPLAINT

     Exhibit A: Consumer Interest Checking Account Agreement ("Deposit Agreement")

DECLARATION OF MARC R. SHAPIRO IN SUPPORT OF DEFENDANT EVOLVE BANK & TRUST'S MOTION TO DISMISS THE COMPLAINT

# TABLE OF CONTENTS

(continued)

**Page**

Exhibit B: Chapter 11 Trustee's Sixth Status Report, filed as ECF No. 331 in *In re Synapse Financial Technologies, Inc.*, Case No. 1:24-bk-10646-MB (C.D. Cal. Br. Ct. July 31, 2024)

Exhibit C: Evolve's Statement of Position, filed as ECF No. 154 in *In re Synapse Financial Technologies, Inc.*, Case No. 1:24-bk-10646-MB (C.D. Cal. Br. Ct. May 16, 2024)

# TABLE OF AUTHORITIES

**Page(s)**

**Cases**

*AJ Energy LLC v. Woori Bank*,
  No. 18-CV-3735 (JMF), 2019 WL 4688629 (S.D.N.Y. Sept. 26, 2019) ................................17

*Amegy Bank, N.A. v. Deutsche Bank, AG.*,
  No. 4:12-cv-23, 2013 WL 12121328 (E.D. Tenn. Mar. 29, 2013) ..........................................18

*Ashcroft v. Iqbal*,
  556 U.S. 662 (2009).........................................................................................................9, 14, 22

*Axiom Inv. Advisors, LLC v. Deutsche Bank AG*,
  234 F. Supp. 3d 526 (S.D.N.Y. 2017)...................................................................................12

*Bank of Marin v. England*,
  385 U.S. 99 (1966)...................................................................................................3, 10, 14

*Belfon v. Credit Check Total Consumerinfo.com, Inc.*,
  No. 2:18-cv-00408 (ADS) (SIL), 2018 WL 4778906 (E.D.N.Y. Oct. 1, 2018) .....................12

*Bell Atl. Corp. v. Twombly*,
  550 U.S. 544 (2007)...........................................................................................................9

*Berry v. Regions Fin. Corp.*,
  507 F. Supp. 3d 972 (W.D. Tenn. 2020).................................................................................21

*Booth v. Fred's Inc.*,
  No. W2002-01414-COA-R3-CV, 2003 WL 21998410
  (Tenn. Ct. App. Aug. 19, 2003) .............................................................................................15

*Cambridge Cap. LLC v. Ruby Has, LLC*,
  675 F. Supp. 3d 363 (S.D.N.Y. 2023).....................................................................................13

*Cargill, Inc. v. Charles Kowsky Res., Inc.*,
  949 F.2d 51 (2d Cir. 1991)......................................................................................................13

*Cassirer v. Thyssen-Bornemisza Collection Found.*,
  596 U.S. 107 (2022).................................................................................................................13

*Citadel Mgmt., Inc. v. Telesis Tr., Inc.*,
  123 F. Supp. 2d 133 (S.D.N.Y. 2000)......................................................................................17

*Cooley v. First Am. Bank*,
  No. E2001-02185-COA-R3-CV, 2002 WL 460270
  (Tenn. Ct. App. Mar. 26, 2002) ..............................................................................................18

*Cortec Indus., Inc. v. Sum Holding L.P.*,
   949 F.2d 42 (2d Cir. 1991)....................................................................................12

*Crye-Leike, Inc. v. Carver*,
   415 S.W.3d 808 (Tenn. Ct. App. 2011) ..............................................................16

*E Sols. for Buildings, LLC v. Knestrick Contractor, Inc.*,
   No. M2018-02028-COA-R3-CV, 2019 WL 5607473
   (Tenn. Ct. App. Oct. 30, 2019) ......................................................................15, 17

*United States ex rel. Foreman v. AECOM*,
   19 F.4th 85 (2d Cir. 2021) ...............................................................................4, 8

*Freedman v. Chem. Const. Corp.*,
   43 N.Y.2d 260 (1977) ...........................................................................................13

*Glazer v. First Am. Nat'l Bank*,
   930 S.W.2d 546 (Tenn. 1996) ...............................................................................19

*Guth v. Suntrust Bank, Inc.*,
   No. E2006-00212-COA-R3-CV, 2007 WL 1135488
   (Tenn. Ct. App. Apr. 17, 2007)...........................................................................19

*Heritage Global Network Los Angeles, Inc. v. Welch*,
   No. 3:23-cv-00685, 2024 WL 695772 (M.D. Tenn. Feb. 20, 2024)......................17

*I. Meyer Pincus & Assocs., P.C. v. Oppenheimer & Co.*,
   936 F.2d 759 (2d Cir. 1991)..................................................................................12

*Ingram Barge Co., LLC v. Bunge N. Am., Inc.*,
   455 F. Supp. 3d 558 (M.D. Tenn. 2020)...............................................................16

*JPMorgan Chase Bank, N.A. v. 29-33 Ninth Ave., LLC*,
   No. 710 F. Supp. 3d 259 (S.D.N.Y. 2024)......................................................15, 17

*Lefkowitz v. Bank of N.Y.*,
   676 F. Supp. 2d 229 (S.D.N.Y. 2009)......................................................................9

*Louros v. Cyr*,
   175 F. Supp. 2d 497 (S.D.N.Y. 2001)....................................................................19

*Marks, Shell, & Maness v. Mann*,
   No. M2002-00652-COA-R3-CV, 2004 WL 1434318
   (Tenn. Ct. App. June 23, 2004)............................................................................18

*Merrill Lynch, Pierce, Fenner & Smith, Inc. v. Chemical Bank*,
   57 N.Y.2d 439 (1982) ...........................................................................................19

*Nat. Waste Assocs., LLC v. Lifeway Christian Resources of the S. Baptist*
   *Convention*,
   No. 3:20-cv-00654, 2022 WL 2920395 (M.D. Tenn. July 25, 2022) ......................................16

*Nicosia v. Amazon.com, Inc.*,
   834 F.3d 220 (2d Cir. 2016).......................................................................................... 11-12

*Northampton Rest. Grp., Inc. v. FirstMerit Bank, N.A.*,
   492 F. App'x 518 (6th Cir. 2012) .............................................................................................21

*Ohanian v. Apple Inc.*,
   No. 20 Civ. 5162 (LGS), 2022 WL 826415 (S.D.N.Y. Mar. 18, 2022) ....................................4

*Payday Advance Plus, Inc. v. Findwhat.com, Inc.*,
   478 F. Supp. 2d 496 (S.D.N.Y. 2007)......................................................................................16

*Raizberg v. JV CJSC Gulfstream Sec. Sys.*,
   No. 11 Civ. 8498 (KMW), 2013 WL 1245545 (S.D.N.Y. Mar. 26, 2013) ...............................8

*Salameno v. Gogo Inc.*,
   No. 16-CV-0487, 2016 WL 4005783 (E.D.N.Y. July 25, 2016)...............................................12

*Simonton v. Huff*,
   60 S.W.3d 820 (Tenn. Ct. App. 2000) ................................................................................ 21-22

*Smith v. Hi-Speed, Inc.*,
   536 S.W.3d 458 (Tenn. Ct. App. 2016) ...................................................................................16

*TNIJACI01 Good 961 Lower Brownsville Rd. LLC v. FC Cox Constr., LLC*,
   No. 1:22-cv-01015-STA-jay, 2023 WL 4504596 (W.D. Tenn. Feb. 14, 2023) ......................15

*Verzani v. Costco Wholesale Corp.*,
   641 F. Supp. 2d 291 (S.D.N.Y. 2009)...................................................................................5, 12

*Ward v. Coleman-Ward*,
   No. 1:19-cv-01119-jay, 2020 WL 13660319 (W.D. Tenn. May 29, 2020)..............................19

*In re Watson Labs., Inc.*,
   101 F.4th 223 (2d Cir. 2024) ..............................................................................................9, 14

*Weese v. Wyndham Vacation Resorts*,
   No. 3:07-CV-433, 2009 WL 1884058 (E.D. Tenn. June 30, 2009) ................................... 14-15

*Wells Fargo Bank, N.A. v. Wrights Mill Holdings, LLC*,
   127 F. Supp. 3d 156 (S.D.N.Y. 2015)...............................................................................5, 8, 13

*Wilson v. Kellogg Co.*,
   111 F. Supp. 3d 306 (E.D.N.Y. 2015) .....................................................................................12

*Yinghong Mach. Int'l Ltd. v. Wholesale Equip., Co.*,
   No. 2:13-cv-02671-JTF-cgc, 2014 WL 12887673 (W.D. Tenn. Oct. 17, 2014) ....................17

**Statutes**

Tenn. Code Ann. § 45-1-127(a) ..................................................................................................19

**Court Rules**

Fed. R. Civ. P. 12(b)(6)................................................................................................5, 8, 12

**Other Authorities**

David Dayen, *Fintech Fight Leads to Hundreds of Thousands of Frozen
   Accounts*, The Am. Prospect (May 23, 2024),
   https://prospect.org/economy/2024-05-23-fintech-fight-frozen-bank-accounts-
   synapse/......................................................................................................................2, 6, 7

Evolve, "Evolve Bank & Trust Statement on Synapse Bankruptcy,"
   https://www.getevolved.com/about/news/evolve-bank-trust-statement-on-
   synapse-bankruptcy) ...................................................................................................8

https://banking.withyotta.com/ ..............................................................................2, 5

https://withyotta.com/ ............................................................................................2

## I.     PRELIMINARY STATEMENT

This lawsuit arises out of the mismanagement, failure, and eventual bankruptcy of a financial intermediary called Synapse Financial Technologies, Inc. ("Synapse"). Synapse positioned itself as a middleman between, on the one hand, various financial technology companies (or "fintechs") that use technology to give consumers access to financial services (e.g., mobile payments, savings accounts), and FDIC-insured banks, on the other, that actually provided the banking services to support the fintechs. That is because fintechs do not themselves provide banking services; they merely provide the front-end technology to give users increased access to financial services while actual licensed and chartered banks provide the actual banking services.

Here, customers (sometimes also referred to as "end users") signed up for accounts with these fintechs, including Defendant Yotta Technologies, Inc. ("Yotta"). Synapse, in turn, established relationships with several FDIC-insured banks, including Defendant Evolve Bank & Trust ("Evolve"), eventually creating a bank "ecosystem" that held fintech customer funds. Synapse spread out the funds of any given fintech end user across various banks within Synapse's ecosystem of banks and tracked how much of each customer's funds were held at each partner bank, all of which would equate to a total balance in the customer's front-facing fintech account.

Or, at least that is how it was supposed to work. But, Synapse failed at its job, and ultimately filed for bankruptcy on April 22, 2024 and is currently in Chapter 11 proceedings. Shortly thereafter, on May 11, 2024, Evolve suddenly lost access to Synapse's "dashboard," which was supposed to provide up-to-date information on customer accounts and balances; specifically "which accounts hold what amounts of money." Compl. ¶ 22. Consequently, Evolve froze all Synapse-related accounts until it could determine the correct balance of each account, a decision that was justified following filings by the bankruptcy trustee—former chairwoman of the Board

1

of Directors of the FDIC—declaring that Synapse was "gross[ly] mismanage[d]."[1]  As Evolve works to manually reconcile massive amounts of data to reconstruct accurate end user balances, it has maintained the freeze on end user funds at Evolve and customers cannot access their money.

With that important background, this case comes down to basic allegations that Evolve froze Plaintiffs' accounts when it lost access to Synapse's dashboard.  Specifically, three Yotta customers, unable to sue Synapse directly because of the automatic stay triggered by the Chapter 11 bankruptcy proceedings, bring this putative class action against Yotta and Evolve, seeking damages relating to the account freeze.

The Complaint asserts a breach of contract claim, an unjust enrichment claim, and three tort claims (conversion, negligence, and breach of fiduciary duty).  In an attempt to artfully plead their claims, however, Plaintiffs sweep aside the Consumer Interest Checking Account Agreement (the "Deposit Agreement") directly between Evolve and Plaintiffs, as bank and depositors, respectively.  Plaintiffs do not attach the Deposit Agreement to the Complaint, reference it by name, or identify any relevant terms that might have been breached.

The reason for Plaintiffs' obvious omission is that the Deposit Agreement governing the relationship between Evolve and Plaintiffs forecloses this lawsuit against Evolve.  That Agreement, to which Plaintiffs assented when they signed up for Yotta accounts (and which was posted on every single page of Yotta's website[2]), specifically contemplates a situation like this.  It

---

[1] *See* David Dayen, *Fintech Fight Leads to Hundreds of Thousands of Frozen Accounts*, The Am. Prospect (May 23, 2024), https://prospect.org/economy/2024-05-23-fintech-fight-frozen-bank-accounts-synapse/, *cited in* Compl. ¶ 22 n.10.

[2] It appears that Yotta changed its website, https://withyotta.com/, after the Complaint in this action was filed, but the version of the website that was available to customers during the time in question is available at the bottom of Yotta's current website, where it says "Looking for terms related to Yotta's historical banking product? Please visit banking.withyotta.com."  The Deposit Agreement is available at the bottom of every page of https://banking.withyotta.com/.

provides that Evolve is entitled to freeze a customer's account if it suspects any irregular activity in connection with that account. And it specifically precludes liability for service interruptions that occur beyond Evolve's control. The loss of access to the Synapse dashboard—not to mention Synapse's general unreliability, as detailed by the bankruptcy trustee—fits squarely within those provisions and forecloses any claim that Evolve breached the contract that exists between the Parties.

As for Plaintiffs' tort and quasi-contract claims, the Deposit Agreement also forecloses those as a matter of law. Courts have long recognized that "[t]he relationship of bank and depositor is that of debtor and creditor, founded upon contract." *Bank of Marin v. England*, 385 U.S. 99, 101 (1966). Evolve's duties to Plaintiffs are drawn solely from the Deposit Agreement. Plaintiffs identify no duty (fiduciary or otherwise) that exists beyond those imposed by the Agreement, meaning that Plaintiffs' negligence and breach-of-fiduciary-duty claims fail. Plaintiffs' conversion claim also fails because courts routinely dismiss claims that seek to recast a breach-of-contract allegation as a conversion. As for Plaintiffs' unjust enrichment claim, it is black letter law that a plaintiff may not recover for unjust enrichment when a valid, enforceable contract exists between parties, which is the case here.

Plaintiffs' desire to use judicial process to recover their deposits is understandable, and Evolve is deeply empathetic to the distress and frustration experienced by Plaintiffs and other Synapse end users. But this lawsuit is not the appropriate forum to short-circuit Evolve's reconciliation process, and Plaintiffs' theories are misguided and legally unfounded. Accordingly, this Court should dismiss the Complaint.

## II.    ALLEGATIONS IN THE COMPLAINT AND FACTUAL BACKGROUND

### A.    Plaintiffs Sign Up For Banking Services Through Yotta.

Plaintiffs are customers of Yotta, "an online mobile application platform."  Compl. ¶ 11.
Yotta is a "fintech" app that provides its customers with a savings account for which the interest
earned is "distributed as prizes based on chance."  *Id.* ¶ 14.  It also provides its customers with
debit and credit cards through which customers earn the chance to win prizes with every
transaction.  *Id.*  The idea is to "gamify bank accounts, offering depositors daily lottery tickets."
Dayen, *supra*, *cited in* Compl. ¶ 22 n.10.[3]

Customers use their Yotta accounts as they would a traditional savings account.  Compl.
¶¶ 14-16.  However, because Yotta is not itself a bank, it must use chartered, FDIC-insured banks
to provide banking services.  *Id.* ¶ 18. Yotta used an intermediary, Synapse, to connect it with
banks such as Evolve; the money in Yotta customer accounts was held (through Synapse) in a "for
benefit of," or "FBO" account at sponsor banks like Evolve.  *Id.* ¶ 19.

The money and transactions in Plaintiffs' Yotta accounts held at Evolve were ledgered and
recorded by Synapse.  *Id.*  As Plaintiffs explain, "[t]his leaves fintech customers vulnerable and
dependent on Synapse's ability to provide accurate accounting of their deposits to both fintechs,
such as Defendant Yotta, and banks, such as Defendant Evolve."  *Id.*

---

[3] The news articles cited and hyperlinked in the Complaint are properly considered on a motion to
dismiss because they are "incorporated by reference in the complaint."  *United States ex rel.
Foreman v. AECOM*, 19 F.4th 85, 106 (2d Cir. 2021) (citation omitted); *see Ohanian v. Apple Inc.*,
No. 20 Civ. 5162 (LGS), 2022 WL 826415, at *2 n.1 (S.D.N.Y. Mar. 18, 2022) ("The news article
and forum posting may be considered on a motion to dismiss because ***both are expressly
referenced in the Complaint, and a hyperlink to the latter is included in the Complaint***.")
(emphasis added).

### B.    All Yotta Customers Agree To A Consumer Interest Checking Account Agreement With Evolve.

All Yotta end users were required to agree to the Deposit Agreement when they signed up for a Yotta account.[4]  Word Decl. ¶ 4.  Plaintiffs admit as much, alleging that they "formed a contract with Defendants at the time they deposited monies with Yotta, which monies were transferred to Evolve as Yotta's banking partner."  Compl. ¶ 59.  Although the Complaint refers to agreements between themselves and Yotta and Evolve, Plaintiffs do not attach the contract. Compl. ¶¶ 34(d), 59.

The Deposit Agreement governs all aspects of the end user's relationship with Evolve, including their demand deposit account at the bank, which is part of Yotta's FBO account with Evolve.  The Deposit Agreement is provided to all Yotta customers by Synapse "on behalf of [Evolve]," and "governs the interest-bearing consumer demand account" that Synapse opened at Evolve for the benefit of each customer.  Deposit Agreement at 1.  For example, paragraphs 4 and 5 govern deposits, withdrawals, and the availability of funds generally.  The Agreement also contains several provisions that speak directly to the issue in this case.  Paragraph 2.13 provides:

> **Freezes, Blocking or Closing Accounts Due to Irregular or Unlawful Activities.**  You agree that if Bank suspects that any irregular, unauthorized, or unlawful activity may be occurring in connection with your Account,

---

[4] The Deposit Agreement is attached as Exhibit A to the Declaration of Harry Alan Word, Jr. ("Word Decl.").  It is also available at the bottom of every single webpage on Yotta's banking product website by clicking the link "Deposit Agreement."  See https://banking.withyotta.com/. As discussed below, *infra* Part IV.A, it is appropriate for the Court to consider the Deposit Agreement at the motion to dismiss stage because it is integral to Plaintiffs' claims. *Verzani v. Costco Wholesale Corp.*, 641 F. Supp. 2d 291, 297-98 (S.D.N.Y. 2009) ("[W]here the claim is for breach of contract, the complaint is deemed to incorporate the contract by reference because the contract is integral to the plaintiffs' claim.").  In addition, the Court may take judicial notice of publicly available party websites. *Wells Fargo Bank, N.A. v. Wrights Mill Holdings, LLC*, 127 F. Supp. 3d 156, 166 (S.D.N.Y. 2015) ("For purposes of a 12(b)(6) motion to dismiss, a court may take judicial notice of information publicly announced on a party's website, as long as the website's authenticity is not in dispute and it is capable of accurate and ready determination.") (cleaned up).

> Bank may "freeze" or place a hold on the balance in such Account pending
> an investigation of such activities….

*Id.* ¶ 2.13.  Paragraph 7.6.1 states, in relevant part, "[e]xcept as required by applicable law, we will

have no liability to you if we are unable to complete a transaction for any reason beyond our

control."  *Id.*  ¶ 7.6.1.  And paragraph 7.8 provides,

> **No Warranty of Availability or Uninterrupted Use.** From time to time,
> services related to the Platform Website, the Mobile App or the Account
> may be inoperative.  When this happens, you may be unable to access the
> Platform, and you may be unable to use the Account or obtain information
> about the Account.…  You agree that we will not be responsible for
> temporary interruptions in service due to maintenance, website changes, or
> failures, ***nor shall we be liable for extended interruptions due to failures***
> ***beyond our control***, including but not limited to the failure of
> interconnecting and operating systems, computer viruses, forces of nature,
> labor disputes and armed conflicts.

*Id.* ¶ 7.8 (emphasis added).

The Deposit Agreement also contains a choice-of-law provision, stating that "[t]his

Agreement shall be governed by the laws of the State of Tennessee."  *Id.* ¶ 7.12.

### C.    Synapse Fails To Reconcile Its Account Ledgers, Forcing Evolve To Freeze Accounts.

In 2022, Evolve decided to wind down its relationship with Synapse.  *See generally* Dayen,

*supra*, *cited in* Compl. ¶¶ 19, 22 nn.8, 10.  Faced with the prospect of losing its primary bank

partner, in approximately October 2023, Synapse migrated willing fintech partners' end user funds

into cash management accounts offered by a wholly owned subsidiary, Synapse Brokerage.[5]

Compl. ¶ 21.  At the same time, other fintechs began "ditch[ing] Synapse over the complications"

resulting from "broken code and tangled customer databases."  Dayen, *supra*.  During this time,

---

[5] For purposes of this motion, the distinction between Synapse and Synapse Brokerage is
irrelevant.  Thus, this Memorandum will simply refer to both interchangeably as "Synapse."

"Synapse and Evolve were in the final stages of winding down [the] services agreement that expired by its terms in September 2023."  Compl. ¶ 20.

Things quickly fell apart.  Synapse was unable "to provide accurate accounting" to Evolve of end user funds deposited in FBO accounts established at Evolve to pool monies that customers deposited at fintechs.  Compl. ¶ 19.  *See generally* Dayen, *supra*, *cited in* Compl. ¶¶ 19, 22 nn.8, 10.  Fintechs also elected to cut middlemen like Synapse out of their business model and chose to directly engage with partner banks like Evolve.  *Id.*  Synapse lost business and inched closer to insolvency, eventually filing for bankruptcy on April 22, 2024.  Compl. ¶¶ 20-21.

On May 11, 2024, "the dashboard Synapse provide[d] to Evolve to maintain customer accounts stopped working."  Dayen, *supra*.  The dashboard was an important tool that Synapse provided to partner banks (like Evolve) in its ecosystem.  Compl. ¶ 22.  The dashboard "detail[ed] which accounts hold what money."  *Id.*  As a result, "[a]ll access to accounts at the affected fintech apps was abruptly shut off."  Dayan, *supra*; *accord* Compl. ¶ 22.  Evolve—faced with substantial questions about Synapse records of end user balances and funds—froze all end user funds maintained at the bank.

Evolve explained this unfortunate situation in a public statement, which Plaintiffs cite in their Complaint:

> Unfortunately, the Bank's investigation of ledgers provided to the Bank by Synapse has revealed numerous material irregularities and inconsistencies in Synapse Brokerage program balances.  In multiple instances, the ledgers provided by Synapse show significant differences in Synapse Brokerage end user balances from one day to the next, without corresponding movement of funds.  Some of these irregularities impact millions of dollars of end user funds, without explanation.
>
> . . .
>
> To do our part in helping achieve a timely resolution, Evolve plans to use Synapse and Synapse Brokerage data made available through

the bankruptcy process to calculate each Synapse Brokerage end
user's true balance.    The Bank is expediting this work, but
performing this reconciliation across millions of transactional
records will take time.

Compl. ¶ 20 n.9 (citing Evolve, "Evolve Bank & Trust Statement on Synapse Bankruptcy,"

https://www.getevolved.com/about/news/evolve-bank-trust-statement-on-synapse-bankruptcy).[6]

Evolve has continuously updated the court in Synapse's bankruptcy proceedings explaining why

the accounts were frozen and why reconciliation is necessary; these updates repeat and expand

upon the public statement quoted above.  *See, e.g.*, Chapter 11 Trustee's Sixth Status Report,

Exhibit B at 2, *In re Synapse Fin. Techs., Inc.*, No. 1:24-bk-10646-MB (Bankr. C.D. Cal. July 31,

2024), ECF No. 331. ("Synapse failed to accurately reconcile Synapse Brokerage end user

transactions and accounts at Evolve.  As a result, end users and Synapse ecosystem banks find

themselves in the regrettable situation of not knowing who is owed what.").[7]

On July 22, 2024, Plaintiffs filed the instant Complaint, alleging that because Evolve took

action to freeze funds within the FBO accounts, Plaintiffs cannot access the money in their Yotta

savings accounts.  They assert claims for negligence, unjust enrichment, breach of fiduciary duty,

---

[6] The Court may consider Evolve's statement because it is publicly available on Evolve's website.
*See Wells Fargo Bank, N.A.*, 127 F. Supp. 3d at 166 ("For purposes of a 12(b)(6) motion to dismiss,
a court may take judicial notice of information publicly announced on a party's website, as long
as the website's authenticity is not in dispute and it is capable of accurate and ready
determination.") (cleaned up).  In addition, Plaintiffs quote Evolve's publicly available statement
in their Complaint.  *See Foreman*, 19 F.4th at 106.

[7] The Chapter 11 Trustee's Sixth Status Report is attached as Exhibit B to the Declaration of Marc
R. Shapiro ("Shapiro Decl."), filed together with the instant Motion.  The Court may take judicial
notice of document filed in related bankruptcy proceedings and therefore may consider those
documents in considering a Motion to Dismiss.  *See Raizberg v. JV CJSC Gulfstream Sec. Sys.*,
No. 11 Civ. 8498 (KMW), 2013 WL 1245545, at *1 n.1 (S.D.N.Y. Mar. 26, 2013) (taking judicial
notice of "publicly available and relevant filings" in related bankruptcy litigation); *Lefkowitz v.
Bank of N.Y.*, 676 F. Supp. 2d 229, 249 (S.D.N.Y. 2009) ("Judicial notice may encompass the
status of other lawsuits, including those in other courts, and the substance of papers filed in those
actions.").

conversion, and breach of contract.[8]  Compl. ¶¶ 24-26.

## III.    LEGAL STANDARD

To survive a motion to dismiss, a complaint must allege facts sufficient to "state a claim to relief that is plausible on its face."  *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (citation omitted).  A facially plausible claim is one that "allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged."  *Id.*  The allegations must "raise a right to relief above the speculative level."  *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007).  Allegations that are "merely consistent with" but do not plausibly suggest liability are insufficient.  *In re Watson Labs., Inc.*, 101 F.4th 223, 235 (2d Cir. 2024) (quoting *Twombly*, 550 U.S. at 557).  Mere "labels and conclusions" are insufficient, and "'naked assertion[s]' will not salvage a complaint otherwise subject to dismissal."  *Id.* (quoting *Iqbal*, 556 U.S. at 678).

## IV.    ARGUMENT

All of Plaintiffs' claims in this action are precluded by the Deposit Agreement.  Plaintiffs bring five claims against Evolve.  Counts I, II, IV, and V sound in either tort or quasi-contract: negligence, unjust enrichment, conversion, and breach of fiduciary duty, respectively.  Count III is for breach of contract.  Each claim is based on the same underlying allegedly wrongful conduct: that Evolve has frozen the Plaintiffs' accounts while it attempts to reconcile the Synapse ledger and determine the appropriate balances of those accounts that are held at Evolve.  *E.g.* Compl. ¶ 47

---

[8] Most recently on October 19, 2024, Evolve announced in a press release that it "has reached a milestone in its reconciliation process, which will allow Evolve to move forward in its efforts to return funds to Synapse Brokerage end users impacted by the Synapse bankruptcy."  Evolve Bank Reaches Reconciliation Milestone, https://reconciliationbyevolve.com/ .  The bank clarified that it "is now preparing to return funds held at Evolve to Synapse Brokerage end users," and that "[o]n October 23, 2024, Evolve will launch a resource center at reconciliationbyevolve.com to provide more information on the reconciliation and the anticipated timeline for returning funds held at Evolve to Synapse Brokerage end users."  *Id.*  Evolve announced that "payments will begin shortly" after November 4, 2024.  *Id.*

(alleging that Evolve was negligent "by failing to provide customers access to their funds"); *id.* ¶ 54 (alleging that Evolve was unjustly enriched by "retain[ing]" Plaintiffs' funds in Yotta accounts); *id.* ¶ 62 (alleging that Evolve breached its contract with Plaintiffs "by denying customers access to their funds"); *id.* ¶ 66 (alleging that Evolve converted the account funds by "retraining [sic] funds and denying Plaintiffs and Class members access to their funds"); *id.* ¶ 73 (alleging that Evolve breached its fiduciary duty "by denying Plaintiffs and Class members access to the funds that lawfully belonged to them").

Courts from the United States Supreme Court on down have long recognized that "[t]he relationship of bank and depositor is that of debtor and creditor, founded upon contract." *Bank of Marin*, 385 U.S. at 101. The duties Evolve owes to its depositors (including Plaintiffs) are derived solely from that contractual relationship—in this case, the terms of the Deposit Agreement. Evolve owes no duty to Plaintiffs aside from the duties owed under the that Agreement. To the extent Plaintiffs have a claim against Evolve, it must be based on the Deposit Agreement.

As a result, all of Plaintiffs' tort and quasi-contract claims fail as a matter of law. Plaintiffs' breach of fiduciary duty claim fails because Evolve owes no duty to Plaintiffs—fiduciary or otherwise—outside the duties created by the Deposit Agreement. The negligence claim is no different; it fails because Plaintiffs have not, and cannot, allege that Evolve owed Plaintiffs any duty outside of that owed under the Deposit Agreement. The unjust enrichment claim similarly fails because unjust enrichment is a quasi-contractual theory that cannot be asserted where a valid, enforceable contract exists between the Parties. The conversion claim also fails because courts routinely reject conversion claims that attempt simply to recast a breach-of-contract claim as the tort of conversion.

Finally, as to Plaintiffs' breach of contract claim, it fails because the Deposit Agreement specifically allows Evolve to do what Plaintiffs allege here: freeze accounts if it "suspects that any irregular, unauthorized, or unlawful activity may be occurring in connection with [the] Account." Deposit Agreement ¶ 2.13. The Deposit Agreement also specifically absolves Evolve from liability arising out of "extended interruptions due to failures beyond [its] control." *Id.* ¶ 7.8.

### A.    The Court Can Consider The Deposit Agreement At The Pleading Stage.

Plaintiffs assert a claim for breach of contract, yet they do not identify the specific agreement between the Parties, nor any of its terms. Compl. ¶¶ 58-63. Instead, they vaguely (and confusingly) assert that they "formed a contract with Defendants at the time they deposited monies with Yotta," and that "[t]he terms of that contract include the promises and affirmations of fact made by Defendants through their marketing materials and Tampa, Florida statements."[9] Compl. ¶ 59. In fact, there is a written agreement between Plaintiff and Evolve—the Deposit Agreement— which this Court should properly consider at the pleading stage for two independent reasons.

First, because Plaintiffs assert a breach of contract claim, this Court is empowered to consider the contract at issue at the motion to dismiss stage. "A complaint is deemed to include any written instrument attached to it as an exhibit or any statements or documents incorporated in it by reference." *Nicosia v. Amazon.com, Inc.*, 834 F.3d 220, 230-31 (2d Cir. 2016) (internal quotation marks and citation omitted). "[W]here the claim is for breach of contract, the complaint is deemed to incorporate the contract by reference because the contract is integral to the plaintiffs' claim." *Verzani*, 641 F. Supp. 2d at 297-98; *accord Axiom Inv. Advisors, LLC v. Deutsche Bank*

---

[9] The reference to "Tampa, Florida, statements" in paragraph 59 of the Complaint is particularly confusing because none of the Parties have any connection to Tampa, Florida, and none of the facts alleged have anything to do with Tampa, Florida. The case's only connection to Tampa, Florida, is that Plaintiffs' counsel is based there. Evolve assumes this is a typographical error.

*AG*, 234 F. Supp. 3d 526, 533 (S.D.N.Y. 2017) ("On a motion to dismiss for breach of contract, courts look not only at the sufficiency of the complaint but also at the contract itself, which **by definition** is integral to the complaint.") (emphasis added).  The reason for this rule is simple and was explained by the Second Circuit more than thirty years ago:  "Plaintiffs' failure to include matters of which as pleaders they had notice and which were integral to their claim—and that they apparently most wanted to avoid—may not serve as a means of forestalling the district court's decision on the motion."  *Cortec Indus., Inc. v. Sum Holding L.P.*, 949 F.2d 42, 44 (2d Cir. 1991); *accord I. Meyer Pincus & Assocs., P.C. v. Oppenheimer & Co.*, 936 F.2d 759, 762 (2d Cir. 1991) ("We therefore decline to close our eyes to the contents of the prospectus and to create a rule permitting a plaintiff to evade a properly argued motion to dismiss simply because plaintiff has chosen not to attach the prospectus to the complaint or to incorporate it by reference.").[10]

Second, the Court may consider the Deposit Agreement at the pleading stage because it is freely available and easily found on Yotta's website—through a link at the bottom of every page of Yotta's "historical banking product" website.  *See Wells Fargo Bank*, 127 F. Supp. 3d at 166 ("For purposes of a 12(b)(6) motion to dismiss, a court may take judicial notice of information publicly announced on a party's website, as long as the website's authenticity is not in dispute and it is capable of accurate and ready determination.") (cleaned up); *see also Belfon*, 2018 WL 4778906, a *3 (taking judicial notice of a website's terms of use both because they were "integral"

---

[10] Numerous courts have applied this rule to the type of contract at issue here—one presented to a customer on a website to which the customer agrees when he or she signs up for a service or purchases a product. *See, e.g.*, *Nicosia*, 834 F.3d at 230-31 (considering terms of use agreed to at time of purchase on a motion to dismiss); *Salameno v. Gogo Inc.*, No. 16-CV-0487, 2016 WL 4005783, at *2 (E.D.N.Y. July 25, 2016) (similar); *Belfon v. Credit Check Total Consumerinfo.com, Inc.*, No. 2:18-cv-00408 (ADS) (SIL), 2018 WL 4778906, at *3 (E.D.N.Y. Oct. 1, 2018) (similar); *Wilson v. Kellogg Co.*, 111 F. Supp. 3d 306, 311-12 (E.D.N.Y. 2015) (similar).

to the complaint **and** because they are "publically [sic] available documents on published websites" from a party).

### B.    Tennessee Law Applies.

Paragraph 2.8 of the Deposit Agreement defines the relationship between Evolve and Plaintiffs as: "that of debtor and creditor, and the Bank owes no fiduciary duty to [Plaintiffs]." Paragraph 7.12 of the Deposit Agreement provides that the "Agreement shall be governed by the laws of the State of Tennessee."   And paragraph 2.10 informs users that their account "is established in Memphis, Tennessee."   "[A] federal court sitting in diversity borrows from the forum State's choice-of-law rule."  *Cassirer v. Thyssen-Bornemisza Collection Found.*, 596 U.S. 107, 108 (2022).  As the New York Court of Appeals has explained, under New York law, "[a]s a general matter, the parties' manifested intentions to have an agreement governed by the law of a particular jurisdiction are honored."  *Freedman v. Chem. Const. Corp.*, 43 N.Y.2d 260, 265 n.* (1977).  Thus, "[i]n the absence of a violation of a fundamental state policy, New York courts generally defer to the choice of law made by the parties to a contract."[11]  *Cargill, Inc. v. Charles Kowsky Res., Inc.*, 949 F.2d 51, 55 (2d Cir. 1991).

### C.    Plaintiffs' Negligence Claim (Count I) Fails Because Evolve Owes No Duty Apart From Those Explicitly Imposed By The Deposit Agreement.

Plaintiffs' negligence claim essentially argues that Evolve failed to abide by the terms of the Deposit Agreement.  The Complaint alleges that Evolve owed a duty "to use reasonable care to protect and secure customer funds and provide access to those monies" to Plaintiffs "as Evolve

---

[11] There would be no "violation of a fundamental state policy" here by applying Tennessee law, which generally aligns with New York law in all relevant respects (as explained below).  *Cargill*, 949 F.2d at 55.  *See Cambridge Cap. LLC v. Ruby Has* LLC, 675 F. Supp. 3d 363, 419 (S.D.N.Y. 2023) (noting that a party bears a "heavy burden" of showing that application of another state's law would violate a fundamental state policy).

depositors." Compl. ¶ 45. Plaintiffs further allege that Evolve breached this duty "by failing to provide customers access to their funds," *id.* ¶ 47, "by failing to maintain the integrity of customer accounts," *id.* ¶ 48, and by failing "to use reasonable care in communicating information about the Service Disruption," *id.* ¶ 49.[12] Notwithstanding the entirely conclusory language in those allegations, all of the so-called duties Plaintiffs claim Evolve breached are in fact covered by the explicit Deposit Agreement. The terms under which Evolve must "provide customers access to their funds" are laid out extensively in the Agreement, notably in paragraph 4.2 ("Withdrawals from the Account") and paragraph 5 ("General Funds Availability"). Crucially, paragraph 2.13 allows Evolve to freeze accounts if it "suspects … any irregular … activity."

In short, the negligence claim fails, because Evolve's duty to Plaintiffs is provided for by the contract, and so all actions lie in contract. As noted above, "[t]he relationship of bank and depositor is that of debtor and creditor, founded upon contract." *Bank of Marin*, 385 U.S. at 101. Under Tennessee law, "[a]n action is one in contract and not in tort when an act complained of is a breach of specific terms of the contract, without any reference to the legal duties imposed by law upon the relationship created thereby." *Weese v. Wyndham Vacation Resorts*, No. 3:07-CV-433, 2009 WL 1884058, at *6 (E.D. Tenn. June 30, 2009) (cleaned up); *accord E Sols. for Buildings, LLC v. Knestrick Contractor, Inc.*, No. M2018-02028-COA-R3-CV, 2019 WL 5607473, at *9 n.7 (Tenn. Ct. App. Oct. 30, 2019); *see also Booth v. Fred's Inc.*, No. W2002-01414-COA-R3-CV,

---

[12] Plaintiffs provide no explanation of how Evolve failed to communicate to Plaintiffs, or how it (as opposed to Synapse) failed to maintain the integrity of customer accounts. *See In re Watson Labs.*, 101 F.4th at 235 (noting that mere "labels and conclusions" are insufficient to state a claim) (citation omitted); *Iqbal*, 556 U.S. at 678 (holding that a complaint which "tenders naked assertions devoid of further factual enhancement" will not suffice) (cleaned up). Plaintiffs' only allegation that attempts to explain what happened here is that Evolve "lost access" to Synapse's dashboard, and that "[w]ithout the dashboard, the accounts of fintech users could [not] be processed." Compl. ¶ 22.

2003 WL 21998410, at *11 (Tenn. Ct. App. Aug. 19, 2003) (treating negligence claim as a claim for breach of contract because relevant duty was defined by the contract).

That is precisely the case here.  Plaintiffs fail to allege any independent duty outside of the Deposit Agreement.  *See Weese*, 2009 WL 1884058, at *6.  Plaintiffs right to access their accounts boils down to whether the account freeze is proper under the Agreement (which, as explained below, *infra* Part IV.G, it is).  Indeed, in a very similar case involving an account freeze, this Court has held (albeit under New York law) that a bank's "duty to [the account holders] would be defined by the [deposit agreement] rather than any independent legal duty, and as explained earlier, the [deposit agreement] appears to permit Chase's decision to freeze the relevant accounts." *JPMorgan Chase Bank, N.A. v. 29-33 Ninth Ave., LLC*, No. 710 F. Supp. 3d 259, 278 (S.D.N.Y. 2024) (internal quotation marks and citation omitted).  The same result follows here under Tennessee law, which applies the same general rule that a plaintiff bringing a negligence claim must plead a duty that exists outside the duties imposed by the parties' contract.  *See TNIJACI01 Good 961 Lower Brownsville Rd. LLC v. FC Cox Constr., LLC*, No. 1:22-cv-01015-STA-jay, 2023 WL 4504596, at *8 (W.D. Tenn. Feb. 14, 2023) ("The independent duty doctrine provides that a tort action only arises when the act constituting the contract breach also constitutes a breach of a common law duty independent of the contractual relationship.") (internal quotation marks and citation omitted).  Because Plaintiffs fail to allege a duty owed by Evolve outside of the Deposit Agreement, their negligence claim must be dismissed.

### D.    Plaintiffs' Unjust Enrichment Claim (Count II) Fails Because The Parties' Relationship Is Governed By A Valid, Enforceable Agreement.

Plaintiffs' claim for unjust enrichment fails for a similar reason:  Their relationship with Evolve is governed by a valid, enforceable contract that spells out the Parties' rights, duties, and obligations pertaining to Plaintiffs' accounts.  It is black letter law that "a party seeking to recover

under a theory of unjust enrichment must demonstrate that there is no existing, enforceable contract between the parties covering the same subject matter." *Ingram Barge Co., LLC v. Bunge N. Am., Inc.*, 455 F. Supp. 3d 558, 577 (M.D. Tenn. 2020) (cleaned up); *accord Smith v. Hi-Speed, Inc.*, 536 S.W.3d 458, 480 (Tenn. Ct. App. 2016); *Crye-Leike, Inc. v. Carver*, 415 S.W.3d 808, 825 (Tenn. Ct. App. 2011).[13]   While courts have allowed plaintiffs to plead unjust enrichment in the alternative to a breach-of-contract claim where there is some indication "that the parties did not, in fact, have a valid contract," *Nat. Waste Assocs., LLC v. Lifeway Christian Resources of the S. Baptist Convention*, No. 3:20-cv-00654, 2022 WL 2920395, at *12 (M.D. Tenn. July 25, 2022) (cleaned up), that is not the case here.   Plaintiffs admit that there is a contract in this case.   *See, e.g.*, Compl. ¶ 59 ("Plaintiffs . . . formed a contract with Defendants at the time they deposited monies with Yotta[.]").   What is more, Plaintiffs did not plead their unjust enrichment claim in the alternative.   Thus, for this deficiency alone, Plaintiffs' unjust enrichment claim fails.

### E.   Plaintiffs' Conversion Claim (Count IV) Fails Because Plaintiffs' Claims Sound In Contract, Not Tort, And Because Evolve Has Not Converted The Account Funds.

#### 1.   Plaintiffs' claim sounds in contract, not tort.

Plaintiffs' conversion claim fails for the same reasons their negligence claim fails. Tennessee courts routinely dismiss conversion claims that are nothing more than an attempt to "bootstrap the contract claim into a tort claim." *Yinghong Mach. Int'l Ltd. v. Wholesale Equip., Co.*, No. 2:13-cv-02671-JTF-cgc, 2014 WL 12887673, at *3-4 (W.D. Tenn. Oct. 17, 2014) (citation omitted) ("Plaintiff would not be entitled to relief for a conversion claim because the

---

[13] This is also the law in New York.   *Payday Advance Plus, Inc. v. Findwhat.com, Inc.*, 478 F. Supp. 2d 496, 504 (S.D.N.Y. 2007) ("[U]njust enrichment is a quasi-contract claim, and the existence of a valid and enforceable written contract governing a particular subject matter ordinarily precludes recovery in quasi-contract for events arising out of the same subject matter.") (citation omitted).

16

action is exclusively based on breach of contract(s).").  For example, in *Heritage Global Network Los Angeles, Inc. v. Welch*, after comparing the allegations for plaintiff's conversion claim to the allegations underlying the breach of contract claim, the court noted that "[t]he conversion claim relies on the same events."  No. 3:23-cv-00685, 2024 WL 695772, at *21 (M.D. Tenn. Feb. 20, 2024).  The court then dismissed the conversion claim because Tennessee courts have a "hostility to conversion claims that are 'necessarily founded upon a breach of contract.'"  *Id.* (quoting *E Sols. for Buildings*, 2019 WL 5607473, at *9 n.7).  This Court should do the same, where the conversion claim undoubtedly "relies on the same events" as Plaintiffs' contract claim.[14]

> ### 2.    Plaintiffs fail to allege that Evolve appropriated the account funds for Evolve's own use and benefit.

Even if Plaintiffs' conversion claim were not merely a restatement of its contract claim, it would fail because Plaintiffs have not alleged facts to satisfy the elements of conversion in Tennessee.  In order to make out a claim for conversion in Tennessee, a plaintiff must show "(1) the appropriation of another's property to one's own use and benefit, (2) by the intentional exercise of dominion over it, (3) in defiance of the true owner's rights."  *Marks, Shell, & Maness v. Mann*, No. M2002-00652-COA-R3-CV, 2004 WL 1434318, at *3 (Tenn. Ct. App. June 23, 2004).  Here, there is no allegation that Evolve has appropriated the funds "to [its] own use and benefit."  *Id.*; *cf. Amegy Bank, N.A. v. Deutsche Bank, AG.*, No. 4:12-cv-23, 2013 WL 12121328, at *8 (E.D. Tenn.

---

[14] The same result would follow under New York law, where "an action for conversion cannot lie where damages are merely sought for breach of contract."  *Citadel Mgmt., Inc. v. Telesis Tr., Inc.*, 123 F. Supp. 2d 133, 148 (S.D.N.Y. 2000) ("For a conversion claim to succeed in the context of a dispute regarding a contract, the breach of contract must result in some 'wrong' that is separately actionable.").  Moreover, the claim would fail under New York for a separate reason: "New York courts have uniformly held … that a claim for conversion does not lie with respect to moneys deposited with a bank."  *AJ Energy LLC v. Woori Bank*, No. 18-CV-3735 (JMF), 2019 WL 4688629, at *6 (S.D.N.Y. Sept. 26, 2019); *accord JPMorgan Chase Bank, N.A.*, 710 F. Supp. 3d at 277.

Mar. 29, 2013) (explaining that defendant benefitted from the converted funds because the funds were used to reduce the amount of a debt owed to defendant).  Evolve is merely freezing accounts until the reconciliation process is complete and it can determine with accuracy the proper account balances.  Evolve is not using the money itself and is not keeping it.  In a similar case, the Tennessee Court of Appeals rejected a claim of conversion where a bank's mistake resulted in an incorrect payment that was soon corrected.  *Cooley v. First Am. Bank*, No. E2001-02185-COA-R3-CV, 2002 WL 460270, at *3 (Tenn. Ct. App. Mar. 26, 2002).  In *Cooley*, plaintiffs brought a claim for conversion when a check for $18,400 that they had meant to send to the IRS was accidentally "treated as a check for $8,400," leading to the IRS assessing penalties against plaintiffs.  *Id.* at *1.  The court granted summary judgment in defendant's favor because there was "no evidence to support the allegation that these defendants converted plaintiffs' property ***for their own use***."  *Id.* at *3 (emphasis added).

### F.    Plaintiffs' Breach of Fiduciary Duty Claim (Count V) Fails Because Banks Do Not Owe A Fiduciary Duty To Depositors.

Tennessee law is clear:  "No financial institution or officer or employee thereof shall be deemed or implied to be acting as a fiduciary or have a fiduciary obligation or responsibility to its customers or to other parties, other than shareholders of the institution, unless there is a written agency or trust agreement under which the financial institution specifically agrees to act and perform in the capacity of a fiduciary."  Tenn. Code Ann. § 45-1-127(a); *see also Ward v. Coleman-Ward*, No. 1:19-cv-01119-jay, 2020 WL 13660319, at *5 (W.D. Tenn. May 29, 2020) (applying § 45-1-127(a) and dismissing claim for breach of fiduciary duty against a bank).  As the Tennessee Supreme Court has held, "under Tennessee law the relationship of [a bank] and [a depositor is] simply that of debtor/creditor; therefore, the bank ha[s] no fiduciary duty to [a depositor]."  *Glazer v. First Am. Nat'l Bank*, 930 S.W.2d 546, 550 (Tenn. 1996); *see also Guth v.*

*Suntrust Bank, Inc.*, No. E2006-00212-COA-R3-CV, 2007 WL 1135488, at *3 (Tenn. Ct. App. Apr. 17, 2007) ("Our Supreme Court has very clearly stated that under Tennessee law, the relationship of a bank to a depositor is simply a debtor/creditor relationship and the bank owes the depositor no fiduciary duty.").[15]  Indeed, as with all of Plaintiffs' tort claims, any liability on the part of Evolve under Tennessee law is "limited solely to performance under the contract and shall not extend beyond the scope of the contract."  Tenn. Code Ann. § 45-1-127(a).

Plaintiffs do not point to any "agency or trust agreement," Tenn. Code. Ann. § 45-1-127(a), nor do they allege any other facts supporting a conclusion that Evolve had a fiduciary duty to Plaintiffs.  Instead, they simply allege in a conclusory fashion that "Defendants owed a fiduciary duty to Plaintiffs and Class members to protect, secure and retain all monies that lawfully belonged to them."  Compl. ¶ 71.  That is insufficient.  Under Tennessee (and New York) law, Plaintiffs are wrong.  Accordingly, the Plaintiff's breach of fiduciary duty claim should be dismissed.

### G.    Plaintiffs' Breach of Contract Claim (Count III) Fails Because The Account Freeze Is Permitted By The Deposit Agreement.

Stripped of the gratuitous non-contractual claims in the Complaint, this case becomes one of straightforward contract interpretation.  The Deposit Agreement provides clear obligations and duties that determine how and when a customer can access their account.  Paragraphs 4.2 and 5 outline the contours of the customer's right to withdraw from their account—for instance, customary limits on "Bill Pay via Check," ATM withdrawals, and overdrafts in paragraph 4.2, and rules regarding the availability of deposited funds in paragraph 5.  In Paragraph 2.13, customers

---

[15] The same is true under New York law.  *See Merrill Lynch, Pierce, Fenner & Smith, Inc. v. Chemical Ban*k, 57 N.Y.2d 439, 444 (1982) ("[T]he underlying relationship between a bank and its depositor is the contractual one of debtor and creditor."); *Louros v. Cyr*, 175 F. Supp. 2d 497, 516 (S.D.N.Y. 2001) (quoting *Merrill Lynch* and concluding, "[a]s such, a bank does not owe a fiduciary duty to its customers").

agree "that if [Evolve] suspects that any irregular, unauthorized, or unlawful activity may be occurring in connecting with [their] account, [Evolve] may 'freeze' or place a hold on the balance in [their] Account pending an investigation of such activities."  Moreover, they agree that Evolve "will have no liability to [customers] if [Evolve is] unable to complete a transaction for any reason beyond [its] control."  Deposit Agreement ¶ 7.6.1; *see also id.* ¶ 7.8 ("You agree that [the Bank] will not be responsible for … extended interruptions due to failures beyond [the Bank's] control, including but not limited to ***the failure of interconnecting and operating systems*** ….") (emphasis added).

That is precisely what Plaintiffs allege happened here.  Plaintiffs state that they are "vulnerable and dependent on Synapse's ability to provide accurate accounting of their deposits to both fintechs, such as Defendant Yotta, and banks, such as Defendant Evolve."  Compl. ¶ 19.  They allege that in May 2024, "Evolve lost access to Synapse Brokerage's 'dashboard' that details which accounts hold what amounts of money.  Without the dashboard, the accounts of fintech users could [not] be processed."  Compl. ¶ 22.  Simply stated, according to Plaintiffs' own allegations, Synapse's failings rendered the dashboard inaccessible, creating a failure of operating systems and interruptions beyond Evolve's control.  Deposit Agreement ¶ 7.8.  Nowhere is there any allegation that Evolve controlled the dashboard, or any of its conduct led to the inaccessibility of the dashboard.

Of course, by omitting any specific reference to the Deposit Agreement, the Complaint never explains how the above allegations constitute a breach of any specific term of the Deposit Agreement.  For this reason alone, the Court should dismiss Plaintiffs' breach-of-contract claim. *Northampton Rest. Grp., Inc. v. FirstMerit Bank, N.A.*, 492 F. App'x 518, 522 (6th Cir. 2012) ("[I]t is a basic tenet of contract law that a party can only advance a claim of breach of written contract

by identifying and presenting the actual terms of the contract allegedly breached.") (citation omitted); *accord Berry v. Regions Fin. Corp.*, 507 F. Supp. 3d 972, 980 (W.D. Tenn. 2020) ("Because Plaintiffs fail to identify a contract or provision of a contract that either the Regions Defendants or Truist breached, their breach of contracts claims in the Proposed Amended Complaint are futile.").

But setting aside the sufficiency of Plaintiffs' allegations of breach, the account freeze as alleged in the Complaint does not constitute breach under the plain terms of the Deposit Agreement.[16] When interpreting a contract, "the court must examine the language of the contract, giving each word its usual, natural, and ordinary meaning." *Simonton v. Huff*, 60 S.W.3d 820, 825 (Tenn. Ct. App. 2000). Evolve's unexpected loss of access to the Synapse dashboard fits the ordinary meaning of "irregular … activity," for which Evolve may freeze accounts under the Deposit Agreement. And the Complaint does not allege that Evolve had any control over the dashboard, meaning that this circumstance also clearly fits under paragraphs 7.6.1 and 7.8, which preclude liability on the part of Evolve for circumstances "beyond [its] control." *See Iqbal*, 556 U.S. at 678 ("Where a complaint pleads facts that are merely consistent with a defendant's liability, it stops short of the line between possibility and plausibility of entitlement to relief.") (cleaned up). Plaintiffs have thus failed to plead a breach of any term of the Deposit Agreement and their breach of contract claim should be dismissed.

---

[16] The account freeze was also permissible under—and indeed required by—various state and federal banking regulations that require banks to, among other things, monitor transactions for suspicious activity and conduct their business in a safe and sound manner. *See* Evolve's Statement of Position, *In re Synapse Fin. Techs., Inc.*, No. 1:24-bk-10646-MB (Bankr. C.D. Cal. May 16, 2024), ECF No. 154, attached as Exhibit C to the Shapiro Declaration.

## V.    CONCLUSION

For the foregoing reasons, the Court should dismiss Plaintiffs' Complaint with prejudice.


New York, New York                          Respectfully submitted,
October 22, 2024

                                            **ORRICK HERRINGTON & SUTCLIFFE LLP**

                                            By:____*/s/ Marc R. Shapiro*_____
                                            Marc R. Shapiro
                                            mrshapiro@orrick.com
                                            51 West 52nd Street
                                            New York, NY 10019
                                            Tel: (212) 506-5000

                                            Amisha R. Patel
                                            apatel@orrick.com
                                            2100 Pennsylvania Avenue NW
                                            Washington, D.C. 20037
                                            Tel: (202) 339-8400

                                            *Attorneys for Evolve Bank & Trust*